

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 18, 2023

**VIA ECF**
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

     Re:  <u>*United States v. Pierre et al.,* 22 Cr. 19 (PGG)</u>
         <u>*United States v. Gulkarov et al.,* 22 Cr. 20 (PGG)</u>

Dear Judge Gardephe:

  The Government writes in response to the Court's request for supplemental briefing in light of the Supreme Court's decision in *Ciminelli v. United States*, No. 21-1170, 2023 WL 3356526, at *1 (U.S. May 11, 2023). The Government respectfully submits that the Supreme Court's decision in *Ciminelli* has no relevance to the instant case. The "property" at issue here is not "potentially valuable economic information." The property at issue is money, held by insurance companies, that was unlawfully paid in violation of the No Fault Insurance regime.

  I.  <u>Background</u>

  In *Ciminelli*, the defendant was convicted of federal wire fraud for his involvement in a scheme to rig the bid process for obtaining state-funded development projects associated with then-New York Governor Andrew Cuomo's Buffalo Billion initiative. 2023 WL 3356526, at *1. The Buffalo Billion initiative was administered by the nonprofit Fort Schuyler Management Corporation. *Id.* The defendant's construction company paid a lobbyist and a Fort Schuyler board member to help the company receive state-funded jobs. *Id.* In particular, the lobbyist and board member developed a set of requests for proposal (RFPs) that effectively guaranteed the

construction company's selection as a preferred developer by treating unique aspects of the construction company as qualifications for preferred-developer status. *Id.*

The Government charged the defendant and others with wire fraud. However, the Government expressly disavowed that the "property" targeted by the scheme was the $750 million that the defendant received in project money. *Id.* at *3, fn. 1. An earlier indictment alleged that the Buffalo Billion contracts were the property at issue. *Id.* But, to defend against the defendants' motion to dismiss, the Government relied solely on the theory that the scheme defrauded Fort Schuyler of its right to control its assets." *Id.* (quotation marks and backets omitted).

Thus, the Government relied solely on a "right to control" theory, "under which the Government can establish wire fraud by showing that the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions." *Id.* at *3. As argued below, the "trial evidence demonstrated that the defendants, by secretly tailoring the Buffalo and Syracuse RFPs, took steps to reduce the possibility that companies other than their own would be seen as competitive, or even qualified at all, for the bids at issue," and "Fort Schuyler employed the RFP process precisely because of its desire for free and open competition, and that the FS Board relied on this aspect of the process to achieve its economic objective -- selecting the lowest-priced or best-qualified vendor." *United States v. Percoco*, 13 F.4th 158, 170–71 (2d Cir. 2021). Thus, in the Government, District Court, and Second Circuit's view, "in rigging the RFPs to favor their companies, defendants deprived Fort Schuyler of potentially valuable economic information, that would have resulted from a truly fair and competitive RFP process." *Id.* (internal citation and quotation marks omitted).

Consistent with the right-to-control theory, the District Court instructed the jury that the term "property" in § 1343 "includes intangible interests such as the right to control the use of one's assets." *Ciminelli*, 2023 WL 3356526, at *3. The jury could thus find that the defendants harmed Fort Schuyler's right to control its assets if Fort Schuyler was "deprived of potentially valuable economic information that it would consider valuable in deciding how to use its assets." *Id.* The District Court further defined "economically valuable information" as "information that affects the victim's assessment of the benefits or burdens of a transaction, or relates to the quality of goods or services received or the economic risks of the transaction." *Id.*

The Supreme Court reversed the defendant's conviction, finding that the "right-to-control theory cannot be squared with the text of the federal fraud statutes, which are "limited in scope to the protection of property rights," *id.* at *4 (quoting *McNally*, 483 U.S. at 360), and the "so-called 'right to control' is not an interest that had 'long been recognized as property' when the wire fraud statute was enacted," *id.* quoting (*Carpenter v. United States*, 484 U.S. 19, 26 (1987).

II.     Discussion

The present case is not *Ciminelli*. The property at issue here is not an insurance company's right to "potentially valuable economic information necessary to make discretionary economic decisions." *Ciminelli*, 2023 WL 3356526, at *3. The property at issue is money, held by insurance companies, that was unlawfully paid in violation of the No Fault Insurance regime. New York law gives insurance companies an absolute statutory right to deny payment to a fraudulently licensed medical provider. The New York Court of Appeals held in *Mallela* that insurance companies are entitled to deny reimbursement because "the defendant companies undisputedly fail[ed] to meet the applicable state licensing requirements, which prohibit nonphysicians from owning or controlling medical service corporations." *State Farm Mut. Auto.*

*Ins. Co. v. Robert Mallela*, 4 N.Y.3d 313, 320–21 (2005).[1] Judge Oetken in *Zemlyansky* similarly found that because "the Court of Appeals definitively held that, as a matter of New York law, fraudulently incorporated PCs 'are not entitled to reimbursement' by insurers," *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 448 (S.D.N.Y. 2013) (quoting *Mallela*, N.Y.3d at 320), "the insurer's entitlement to withhold reimbursement in these circumstances is an interest in money or property, the deprivation of which can be an injury under the fraud statutes," *id.* Likewise, the Second Circuit in *Gabinskaya* affirmed the wire fraud conviction of a physician who unlawfully ceded control of her practice to a nonphysician because in "order to be entitled to receive reimbursement from a no-fault insurer, a medical services PC must be owned by a licensed physician." *United States v. Gabinskaya*, 829 F.3d 127, 133 (2d Cir. 2016).

These decisions are not ambiguous. The "property" at issue is not "potentially valuable economic information." Insurance companies have an absolute right to deny payment to a fraudulently licensed medical provider. *Mallela*, N.Y.3d at 320; *Zemlyansky*, 945 F. Supp. 2d at 448; *Gabinskaya*, 829 F.3d at 133. The property at issue is not an intangible asset but money, held by insurance companies, that was unlawfully paid in violation of the No Fault Insurance

---

[1] The *Mallela* Court discussed that the licensing regime also has sound policy benefits, including that the New York Superintendent of Insurance wrote in a brief to the Court of Appeals "that he promulgated this rule to combat rapidly growing incidences of fraud in the no-fault regime, fraud that he has identified as correlative with the corporate practice of medicine by nonphysicians." *Mallela*, 4 N.Y.3d at 320. This does not transform the property at issue into "potentially valuable economic information." The property remains money, held by insurance companies, that was paid in violation of New York law.

regime. This is sufficient to meet the requirements of wire fraud and all its variants, including health care fraud.

                        Respectfully submitted,

                        DAMIAN WILLIAMS
                        United States Attorney

By:   /s/
                        MATHEW ANDREWS
                        LOUIS A. PELLEGRINO
                        Assistant United States Attorneys
                        Tel. (212) 637-6526 / 2617
                        mathew.andrews@usdoj.gov
                        louis.pellegrino@usdoj.gov