UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                       :

UNITED STATES OF AMERICA

                                       :

       -v.-

                                       :           22 Cr. 19 (PGG)

BRADLEY PIERRE, *et al.*,

                                       :

               Defendants.

                                       :
------------------------------------------------------------------x


## <u>GOVERNMENT'S MOTIONS IN LIMINE</u>


                                       DAMIAN WILLIAMS
                                         United States Attorney for the
                                         Southern District of New York
                                         One St. Andrew's Plaza
                                         New York, New York 10007


Mathew Andrews
Qais Ghafary
Michael Lockard
Assistant United States Attorneys
     -Of Counsel-

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND .............................................................................................................1

ARGUMENT ..................................................................................................................4

  I.   Bogoraz's Unsolicited Post-Arrest Statement Is Admissible ...............................................4

  II.  Bogoraz's Proffer Statements Are Admissible to Rebut Certain Defenses.......................6
      A.   Relevant Facts ..........................................................................................................6
      B.   Relevant Law .............................................................................................................6
      C.   Discussion .................................................................................................................8

  III.  Cross-Examination of One of the Case Agents Should Be Appropriately Limited ...........9

  IV.  The Court Should Introduce Bogoraz' Prior Conviction Under Rule 404(b) .................12
      A.   Relevant Facts .........................................................................................................12
      B.   Relevant Law ...........................................................................................................14
      C.   Discussion ...............................................................................................................15

  VI.  The Court Should Permit an Insurance Company Representative to Testify about
      Materiality............................................................................................................21

  VII. The Court Should Preclude Cross-Examination into Irrelevant and Prejudical Topics ...22
      A.   The Court Should Preclude Cross-Examination About Extramarital Affairs...........22
      B.   The Court Should Preclude or Limit Cross-Examination of CW-1 About an
          Irrelevant Drug Conviction that Is Thirty Years Old ...............................................23

  VIII.The Court Should Preclude the Defendants from Introducing Evidence and Arguments
      That Are Irrelevant and Unfairly Prejudicial.....................................................24

CONCLUSION................................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Goldman Sachs & Co.*, 669 F.3d 105 (2d Cir. 2012) ................................................................ 9

*Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999) ............................................................................... 11

*Rogers v. United States*, 422 U.S. 35 (1975) ................................................................................... 25

*Rosario v. City of New York*, No. 18 CIV. 4023 (LGS), 2022 WL 3098305 (S.D.N.Y. Aug. 4, 2022). 22

*Rosario v. City of New York*, No. 18 CIV. 4023 (LGS), 2021 WL 9455782 (S.D.N.Y. Nov. 23, 2021)22

*Shannon v. United States*, 512 U.S. 573 (1994) ............................................................................... 25

*United States v. Adeniyi*, 2004 WL 1077963 (S.D.N.Y. May 12, 2004) .............................................. 10

*United States v. Atuana*, 816 F. App'x 592 (2d Cir. 2020) ............................................................... 18

*United States v. Barrow*, 400 F.3d 109 (2d Cir. 2005) ................................................................... 7, 8

*United States v. Battaglia*, No. 05 Cr. 774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ........ 24

*United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978) ............................................................... 25

*United States v. Cadet*, 664 F.3d 27 (2d Cir. 2011) ........................................................................... 17

*United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000) ....................................................................... 16

*United States v. Cardena,* 842 F.3d 959 (7th Cir. 2016) ..................................................................... 5

*United States v. Cordova*, 157 F.3d 587 (8th Cir. 1998) ................................................................... 11

*United States v. Cuti*, 720 F. 3d 453 (2d Cir. 2013). ......................................................................... 21

*United States v. Demosthene*, 334 F. Supp. 2d 378 (S.D.N.Y. 2004)) ................................................. 10

*United States v. Diaz,* 176 F.3d 52 (2d Cir. 1999) ........................................................................... 14

*United States v. DiLorenzo*, 429 F.2d 216 (2d Cir. 1970). ................................................................. 23

*United States v. Downing*, 297 F.3d 52 (2d Cir. 2002) ..................................................................... 18

*United States v. Dupree*, 870 F.3d 62 (2d Cir. 2017 ................................................................... 14, 17

*United States v. Esposito*, No. 20-2143-CR, 2021 WL 5492935 (2d Cir. Nov. 23, 2021); .................. 22

*United States v. Fazio*, No. S2 11 CR 873, 2012 WL 1203943 (S.D.N.Y. Apr. 11, 2012) .................... 25

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) ................................................................... 15

*United States v. Flom*, 763 F. App'x 27 (2d Cir. 2019) ..................................................................... 18

*United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995) ....................................................................... 15

*United States v. Giovinco*, No. 18-CR-14 (JSR), 2020 WL 832920 (S.D.N.Y. Feb. 20, 2020) ............. 22

*United States v. Gomez*, 210 F.Supp.2d 465, 475 (S.D.N.Y. 2002) ......................................... 8

*United States v. Gulkarov et al.*, 22 Cr. 20 ...................................................................... 2

*United States v. Harris*, 491 F.3d 440 (D.C. Cir. 2007) ....................................................... 24

*United States v. Johnson*, No. 21-CR-428 (ER), 2023 WL 5632473 (S.D.N.Y. Aug. 31, 2023) ......... 19

*United States v. Kaufman*, No. 19-CR-0504 (LAK), 2021 WL 51521 (S.D.N.Y. Jan. 6, 2021)........... 16

*United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989) .................................................. 9

*United States v. Levin,* No. 15 CR. 101 (KBF), 2016 WL 8711458 (S.D.N.Y. Jan. 8, 2016). ............. 20

*United States v. Levy*, 578 F.2d 896 (2d Cir. 1978)............................................................ 5

*United States v. Malpeso*, 115 F.3d 155 (2d Cir. 1997) ...................................................... 10

*United States v. McLaughlin*, 957 F.2d 12 (1st Cir. 1992)................................................... 10

*United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998)................................................. 11

*United States v. Oluwanisola*, 605 F.3d 124 (2d Cir. 2010)) ............................................... 8

*United States v. Ortiz*, 367 F. Supp. 2d 536 (S.D.N.Y. 2005)............................................... 10

*United States v. Ostrer*, 422 F. Supp. 93 (S.D.N.Y. 1976).................................................. 22

*United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991) .................................................. 24

*United States v. Puco*, 453 F.2d 539 (2d Cir. 1971)......................................................... 23

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006)................................................... 18

*United States v. Ramirez,* 894 F.2d 565 (2d Cir. 1990)...................................................... 14

*United States v. Reese*, 933 F. Supp. 2d 579 (S.D.N.Y. 2013)............................................. 10

*United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991 (E.D.N.Y. Apr. 15, 2015) ..................... 26

*United States v. Roberts*, 600 F.3d 149 (2d Cir. 2011 ....................................................... 7, 8

*United States v. Roldan-Zapata,* 916 F.2d 795 (2d Cir. 1990)................................... 15, 18, 20

*United States v. Rosemond*, 841 F.3d 95 (2d Cir. 2016) ................................................ 6, 7, 8

*United States v. Santoro*, 302 F.3d 76 (2d Cir. 2002) ...................................................... 18

*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990)........................................................ 25

*United States v. Shkolir*, 182 F.3d 902 (2d Cir. 1999)................................................... 19, 20

*United States v. Siraj*, No. 05-Cr-104, 2006 WL 2738952 (E.D.N.Y. Sept. 25, 2006)....................... 22

*United States v. Snype,* 441 F.3d 119 (2d Cir. 2006)................................................ 15, 19, 21

*United States v. Torres*, 435 F. Supp. 3d 526 (S.D.N.Y. 2020) .......................................... 19

*United States v. Tussa,* 816 F.2d 58 (2d Cir. 1987)................................................. 15, 19, 21

*United States v. Veal*, 23 F.3d 985 (6th Cir. 1994)................................................................ 11

*United States* v. *Velez*, 354 F.3d 190 (2d Cir. 2004) ......................................................... 7, 8

*United States v. Weichert,* 783 F.2d 23, 26 n. 3 (2d Cir.1986)......................................... 23

*United States v. Williams*, 205 F.3d 23 (2d Cir. 2000)........................................................ 19

*United States v. Zackson*, 12 F.3d 1178 (2d Cir. 1993)................................................ 14, 16

*Zinman v. Black & Decker,* 983 F.2d 431 (2d Cir. 1993)................................................... 23

**Rules**

Fed. R. Evid. 403 ........................................................................................ 10, 15, 22, 24

Fed. R. Evid. 404 ................................................................. 1, 12, 14, 16, 17, 18, 19, 24, 25

v

## PRELIMINARY STATEMENT

The Government respectfully moves *in limine* seeking the following: (1) to introduce defendant Arthur Bogoraz's unsolicited post-arrest statement showing consciousness of guilt; (2) to introduce Bogoraz's proffer statements to rebut certain defenses, if they are presented; (3) to limit cross-examination of one of the Government's case agents; (4) to introduce certain evidence against Bogoraz under Rule 404(b); (5) to introduce certain evidence against defendant William Weiner as background for the charged conspiracy; (6) to permit a representative from Farmers Insurance Company to testify about materiality; (7) to preclude cross-examination of witnesses into irrelevant and prejudicial topics; (8) to admit certain evidence under business records, public records, and residual exceptions; and (9) to preclude the defendants from introducing evidence and arguments that are irrelevant and unfairly prejudicial.[1]

## BACKGROUND

The Court is well-versed in the record given the three years of motions, pleas, and sentencings. The instant prosecution arises out of a multi-year federal investigation into a widespread bribery, healthcare fraud, and money laundering scheme operating throughout the New York and New Jersey area. On November 6, 2019, a grand jury sitting in this district returned an indictment charging 27 defendants in connection with the scheme (the "*Rose* Indictment"). As alleged, Anthony Rose and his co-conspirators paid hundreds of thousands of dollars to employees or agents of hospitals, medical service providers, police officers, and 911 operators employed by the New York City Police Department ("NYPD"), and other entities (collectively, the "lead sources") for the protected, confidential information of tens of thousands

---

[1] The Government intends to promptly file supplemental motions *in limine* concerning coconspirator statements by Bradley Pierre should Pierre plead guilty on December 18, 2023.

of motor vehicle accident victims in New York, New Jersey, and elsewhere. Rose and his co-conspirators then contacted the victims and made false representations to steer the victims to receive medical treatment and consultation from a select "network" of clinics and lawyers in New York, New Jersey, and elsewhere. In reality, these clinics and lawyers were handpicked by Rose and his co-conspirators because the clinics and lawyers were paying illegal kickbacks to Rose and the co-conspirators in exchange for the referrals.

The *Rose* Indictment was not the end of the Government's investigation. The Government continued to investigate others involved in the conduct charged in the *Rose* Indictment—in particular, corrupt doctors, clinic owners, and attorneys who participated in the scheme. Approximately two years later, on or about January 11, 2022, the grand jury returned two additional indictments charging 13 individuals with, among other things, conspiracy to commit healthcare fraud, money laundering, and bribery, in *United States v. Gulkarov et al.*, 22 Cr. 20 (the "*Gulkarov* Indictment") and *United States v. Pierre et al.*, 22 Cr. 19 (the "*Pierre* Indictment").

Arthur Bogoraz and William Weiner are among those charged in the *Pierre* Indictment (collectively, the "*Pierre* Conspirators"). As alleged, the *Pierre* Conspirators participated in a criminal scheme to exploit insurance programs designed to protect motor vehicle accident victims (the "No-Fault Scheme"). Under New York law, every vehicle registered in New York State must have no-fault automobile insurance, which enables the driver and passengers of a vehicle registered and insured in New York State to obtain benefits of up to $50,000 per person for injuries sustained in an automobile accident, regardless of fault (the "No-Fault Law"). In order to be eligible for reimbursement under the No-Fault Law, however, all medical clinics providing no-fault-related medical diagnostic and care services in New York State must be incorporated, owned, operated, and/or controlled by a licensed medical practitioner.

2

Bradley Pierre was the leader of the *Pierre* Conspirators. In order to take advantage of the patient-friendly provisions of the No-Fault Law, Pierre recruited several medical practitioners—including Weiner—to open various medical practices (the "No-Fault Facilities" or "Facilities") between in or about 2008 up to and including 2021. These Facilities fell into two groups: the No-Fault Clinics that conducted initial evaluations of patients and prescribed specialized care, and Nexray, an MRI Facility that provided medical imaging services. Like the No-Fault Clinics, Nexray purported to be operated and controlled by a licensed physician – Weiner. In practice, however, Weiner was a captive doctor. Pierre received the majority of Nexray's proceeds; Pierre controlled Nexray's bank accounts; he influenced the hiring and firing of Nexray's employees; he identified the locations for Nexray's facilities; he negotiated the rent for Nexray's leases; and he alone chose the attorneys that would represent Nexray in arbitration, litigation, and sworn depositions before insurance companies. Pierre further arranged for a network of no-fault doctors and attorneys to refer patients to Nexray for MRI imaging—oftentimes through bribery—in addition to the No-Fault Clinics under his control. In order to boost these referrals, Weiner agreed with Pierre to falsify clinical findings of injuries on MRI reports and pressure radiologists working for Nexray to exaggerate findings of injuries in their own reports. These false clinical findings, in turn, allowed referring physicians and attorneys to bill for additional benefits under the No-Fault Law and obtain larger legal settlements and judgments.

Pierre directed Weiner to lie under oath to insurance companies to conceal the healthcare fraud scheme. Under the No-Fault Law, insurance carriers have the right to subject medical providers to Examinations under Oath ("EUOs") when they suspect that providers have submitted fraudulent claims. During the process, the physician is placed under oath and asked questions relevant to the claim at hand, including whether the medical practice is under the control of non-

physicians. Pierre and Weiner were aware that insurance companies would deny reimbursement for Nexray if Weiner testified truthfully about the medical necessity of treatments and Pierre's control of the facility. Pierre accordingly directed Weiner to falsely state under oath, among other things, that Pierre was solely a lender for Nexray and Pierre played no role in referring patients to Nexray.

Pierre further worked with Bogoraz as part of the scheme. Bogoraz was a paralegal and manager at a law firm incorporated by Bogoraz's wife, the Bogoraz Law Group ("BLG"). Bogoraz engaged in a *quid pro quo* whereby Pierre sent patients from the No-Fault Clinics to BLG for legal representation in return for Bogoraz referring clients to the No-Fault Clinics for medical treatment. In addition, Bogoraz and Pierre agreed to jointly pay bribes for patient and client referrals to the No-Fault Clinics and BLG. As part of the scheme, Pierre and Bogoraz paid Rose to bribe employees or agents of public and private institutions, including hospitals and the NYPD, to unlawfully disclose the protected, confidential information of tens of thousands of motor vehicle accident victims in New York, New Jersey, and elsewhere. After obtaining the confidential information of motor vehicle accident victims, Rose contacted the victims and made false representations in order to steer victims to receive medical treatment from the No-Fault Clinics and Nexray, and legal representation from BLG and a law firm incorporated by Pierre's wife.

## ARGUMENT

### I.   Bogoraz's Unsolicited Post-Arrest Statement Is Admissible

Bogoraz was arrested on January 12, 2022, and the magistrate judge presiding over his arraignment ordered Bogoraz detained. The same evening, before he was transported to the Metropolitan Detention Center ("MDC"), Bogoraz requested to speak with two FBI Special Agents. The agents told Bogoraz that he was represented by an attorney and should speak with his

attorney about what he wants to discuss prior to speaking with them. Bogoraz stated he understood and did not want to speak with his attorney and wanted to speak with the agents. The agents again advised Bogoraz that he was represented by an attorney, the agents were not going to ask him any questions, and that anything he told the agents can and will be used against him. Bogoraz stated that he understood and still wanted to talk. At this point, Bogoraz stated that he has and was willing to provide information regarding the criminal activity of Bradley Pierre, Jean Pierre, Nonna Shikh (Bradley Pierre's wife), and other targets of the Government's investigation. Bogoraz stated that he would provide the information to avoid either being remanded or to limit how long he was to be detained at MDC.

Bogoraz's statements are admissible to show consciousness of guilt. In *United States v. Levy*, 578 F.2d 896, 900 (2d Cir. 1978), the Second Circuit held that the post-arrest offer of cooperation by a defendant to a law enforcement officer "evidences a consciousness of guilt and is relevant to prove the charge against [him]." As the Second Circuit recognized, "[n]o fault can be found with allowing in evidence his volunteered desire to cooperate in the future, since it was evidence of his consciousness that he was in serious difficulty with the law and needed to do something to extricate himself." *Id.* at 901; *accord United States v. Cardena,* 842 F.3d 959, 992 (7th Cir. 2016) ("We agree with our sister circuits: an offer to cooperate to get oneself out of trouble is relevant evidence tending to show consciousness of guilt.").  The same principle applies to Bogoraz here.

Bogoraz's statement is also not protected by Federal Rule of Criminal Procedure 11(e)(6). The FBI agents explicitly told Bogoraz that any statements can and would be used against him, and Bogoraz acknowledged that he understood. In addition, as in *Levy*, the "agents did not initiate the discussion," but "[r]ather, [the defendant] volunteered to cooperate in the absence of any

request from the agents." *Id.* at 901. Likewise, Bogoraz's admission were not "made concurrently with the offer immunized from use, since there was no offer to plead guilty on condition that the charges or the possibility of maximum punishment would be reduced." *Id.* Accordingly, "[i]t is enough, in the circumstances, that the statement was voluntary, for even when there has been a plea bargain, the lack of a causal connection between the bargain and the confession precludes exclusion of the confession." *Id.*

## II.     Bogoraz's Proffer Statements Are Admissible to Rebut Certain Defenses

Bogoraz's statements to the Government pursuant to a proffer agreement—during which he admitted to knowingly participating in the bribery scheme—are further admissible to rebut certain defenses.

### A.  Relevant Facts

Bogoraz and his counsel met with the Government on April 11, 2022. Bogoraz made several statements pursuant to the Government's standard proffer agreement. Among other things, Bogoraz stated that a cooperating witness ("CW-1") told Bogoraz that CW-1 was paying "lead sources," and Bogoraz was aware that these payments were illegal. Bogoraz further stated that he knew that the lead sources were likely working for police precincts and insurance brokers. Bogoraz also stated during the proffer that in 2019, Bogoraz had a meeting with Bradley Pierre about becoming partners with CW-1, and Pierre stated, in sum and substance, that they were bribing a hospital employee. Bogoraz then stated that he agreed to help bribe the hospital employee.

### B.  Relevant Law

"Proffer agreements are contracts to be interpreted according to ordinary principles of contract law."  *United States v. Rosemond*, 841 F.3d 95, 107 (2d Cir. 2016).  "[W]here a proffer agreement is entered into knowingly and voluntarily, a provision in which defendant waives his

exclusionary privilege under Federal Rule of Evidence 410 by permitting the Government to introduce defendant's proffer statements to rebut contrary evidence or arguments presented by the defense, whether or not defendant testifies, is enforceable." *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004). "The waiver language [of such a proffer agreement] is fairly construed to apply to any proffer statements that could fairly rebut" any factual assertions or arguments by the defense. *United States v. Barrow*, 400 F.3d 109, 123 (2d Cir. 2005). "'[R]ebuttal' is hardly limited to evidence that directly contradicts what it opposes; rather, rebuttal encompasses any evidence that the trial judge concludes fairly counters and casts doubt on the truthfulness of factual assertions advanced, whether directly or implicitly, by an adversary." *Id.* at 121.

In *Rosemond*, the Second Circuit gave guidance on when the defense triggers the Government's right to introduce the defendant's proffer statements in accordance with a waiver of Rule 410 contained in a proffer agreement. 841 F.3d at 107-112. The analysis involves two steps: "we first ask whether there has been any evidence offered or elicited, or 'factual assertion' made, by or on behalf of the defendant that would trigger the Rule 410 waiver, and second, if so, whether the proffer statement fairly rebuts the fact asserted or evidence offered or elicited." *Id.* at 107. The Court reaffirmed its holding in *Barrow* that a Rule 410 waiver "applie[s] to any factual assertions made by or on behalf of the defendant, whether made 'directly or implicitly,' during counsel's opening argument or through cross examination." *Id.* (quoting *Barrow*, 400 F.3d at 119). A defendant does not open the door to his own proffer statements merely by arguing that the Government has not met its burden of proof or by "cross-examin[ing] a witness 'in a way that cast[s] doubt on his credibility." *Id.* at 108 (quoting *United States v. Roberts*, 600 F.3d 149, 163 (2d Cir. 2011). He does open the door, however, by making in his jury addresses any explicit or implicit factual arguments that are inconsistent with his proffer statements or by conducting cross-

examination through "questions 'accusing a witness of fabricating an event'" to which the defendant admitted. *Id.* at 109 (quoting *Barrow*, 400 F.3d at 119). In a non-exhaustive list, the Court in *Rosemond* itemized certain "factual assertions that will trigger the waiver," including:

- asserting in a jury address that someone other than the defendant committed the crime, *id.* at 109 (citing *Barrow*, 400 F.3d at 114, 119);

- accusing a member of law enforcement of fabricating evidence, *id.* at 109-10 (citing *Barrow*, 400 F.3d at 114, 119; *United States v. Oluwanisola*, 605 F.3d 124, 132 (2d Cir. 2010));

- arguing that the charged conduct occurred under circumstances that raise doubt about the defendant's intent, *id.* at 110 (citing *United States v. Gomez*, 210 F.Supp.2d 465, 475 (S.D.N.Y. 2002); *United States v. Velez*, 354 F.3d 190, 195 (2d Cir. 2004));

- offering evidence to attack a witness's testimony about a material fact, not just to impugn the witness's credibility, *id.* (citing *Roberts*, 660 F.3d at 163-64).

Finally, the defense is permitted to argue that the jury should not draw certain inferences from the Government's evidence, *id.* at 111; however, it may not argue that the evidence supports alternative inferences that are inconsistent with the defendant's proffered admissions.

### C.  Discussion

The Court should find that Bogoraz's proffer statements are admissible if defense counsel affirmatively asserts that (1) Bogoraz did not know that CW-1 was paying for identifying information of motor vehicle accident victims, such as their names and phone numbers; (2) Bogoraz did not know that these payments were illegal or bribes; (3) CW-1 never sent motor vehicle accident victims to Bogoraz's law firm in return for kickbacks; (4) that Bogoraz did not

know Pierre or know that Pierre was involved in paying bribes; or (5) accuses a witness of fabricating an event or conversation with Bogoraz to which Bogoraz has admitted.  While counsel can assert that the Government has not met its burden of proof, any claims of actual innocence will trigger the waiver provisions of the proffer agreement.  The Government also reserves the right to seek introduction of Bogoraz's proffer statements to the extent his counsel makes any other statements or arguments that contradict what Bogoraz said during the proffer.

### III.    Cross-Examination of One of the Case Agents Should Be Appropriately Limited

The Government anticipates that it will call one of its case agents ("Agent-1") to testify about Bogoraz's post-arrest and proffer statements, described above. Agent-1 was one of the lead agents on this investigation, and therefore has significant knowledge of the case beyond the anticipated scope of Agent-1's direct testimony. Given that Agent-1 is being called merely to recite Bogoraz's statements on two occasions, any cross-examination should be similarly limited.[2]

Rule 611(b) of the Federal Rules of Evidence limits the scope of cross-examination "to the subject matter of the direct examination and matters affecting the credibility of the witness."  *See Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 110 (2d Cir. 2012).  The fact that the witness is a law enforcement agent who has wide involvement in an investigation of the defendant does not expand the scope of permissible cross-examination.  *See, e.g.*, *United States v. Koskerides*, 877 F.2d 1129, 1136 (2d Cir. 1989) (affirming district court's limitation of cross-examination of case

---

[2] For this reason, the Government also does not intend to provide Bogoraz with all prior statements of Agent-1 during the entire investigation.  Rather, pursuant to 18 U.S.C. § 3500(b), the Government will only be providing statements that "relate[] to the subject matter as to which the witness has testified" (*i.e.*, written notes or materials describing Bogoraz' post-arrest and proffer statements).  *See also* Fed. R. Crim. P. 26.2(a) (requiring parties to produce a statement of the witness that "relates to the subject matter of the witness's testimony").

agents to scope of direct testimony); *United States v. McLaughlin*, 957 F.2d 12, 18 (1st Cir. 1992) (affirming limitation of cross-examination of government agents to scope of direct because "a party has no right, unless the court in the exercise of its discretion allows, to cross-examine a witness beyond the subject matter of his direct examination and beyond matters affecting credibility."); *United States v. Adeniyi*, 2004 WL 1077963, at *3 (S.D.N.Y. May 12, 2004) ("The Court is also unpersuaded by Defendant's apparent contention that [the case agent's] acknowledgment during direct examination that he had participated in an investigation of Defendant, coupled with [the case agent's] testimony regarding certain specific aspects of that investigation, combined to give defense counsel carte blanche to inquire into any subject related to the investigation of Defendant.").

Moreover, courts routinely bar attempts to shift the focus of criminal trials from the charges against the defendant to the conduct of the investigation, under Federal Rules of Evidence 401 and 403.  *See, e.g., United States v. Malpeso*, 115 F.3d 155, 162-63 (2d Cir. 1997); *United States v. Reese*, 933 F. Supp. 2d 579, 583-84 (S.D.N.Y. 2013) ("a defendant 'may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case.'" (quoting *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004)); *United States v. Ortiz*, 367 F. Supp. 2d 536, 547-48 (S.D.N.Y. 2005) (holding that defendant's rights were not violated by refusal to grant an adjournment so he could develop defense that he had been setup by police since any evidence supporting the theory would have been inadmissible under Rule 403 anyway). In particular, a defendant's allegation that the investigation was in some way defective does not make the alleged deficiency relevant, absent some connection between the claimed deficiency and the evidence of the charges.   As the Tenth Circuit has explained:

> Admittedly, the quality or bias of a criminal investigation occasionally may
> affect the reliability of particular evidence in a trial, and hence, the facts

> surrounding the government's investigation may become relevant . . . .
> However, in [the defendant's] case, he failed to establish the requisite
> connection between the allegedly "shoddy" and "slanted" investigation and
> any evidence introduced at trial. . . . To have allowed [the defendant] to put
> the government on trial . . . would inevitably divert the jury's attention from
> the issues of the trial.

*United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998) (internal citations omitted)

(commending the trial judge for "keeping the focus of the trial upon the issues properly before the

jury"), *abrogated in part on other grounds by Hooks v. Ward*, 184 F.3d 1206, 1227 (10th Cir.

1999); *see also United States v. Cordova*, 157 F.3d 587, 594 (8th Cir. 1998) (upholding trial court's

exclusion of exploration of the quality of the investigation, as such inquiry would be "time-

consuming and of little relevance"; issue is whether "the government's witnesses were truthful and

whether their testimony was sufficient to convict"); *United States v. Veal*, 23 F.3d 985, 989 (6th

Cir. 1994) (upholding district court's refusal to allow defense to attack government's investigation

as "sloppy" because the jury's role was not to pass on the government's investigation).

  The defense should be precluded from cross-examining Agent-1 outside the subject matter

of his direct testimony—namely, describing Bogoraz's post-arrest and proffer statements.  There

is no reasonable dispute regarding the authenticity of these statements—Bogoraz's counsel was

present for the proffer.  Moreover, a wide-ranging cross-examination regarding the investigation

would not be probative of the central issues in this case (*i.e.*, whether Bogoraz was aware that CW-

1 was acquiring victims for Bogoraz's firm through bribes).  Given the negligible probative value

of a wide-ranging cross-examination regarding the investigation, such questioning carries a

significant risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

Moreover, if the defendant wishes to examine Agent-1 outside the scope of his direct examination,

the proper method for doing so is to meet the legal and evidentiary requirements for calling Agent-

1 in his own case-in-chief.[3]  The defendant cannot circumvent these requirements by engaging in a freewheeling cross-examination in contravention of Rule 611(b) of the Federal Rules of Evidence.

For the forgoing reasons, cross-examination of Agent-1 should be limited to the scope of his direct examination concerning Bogoraz's post-arrest and proffer statements.

### IV.   The Court Should Introduce Bogoraz' Prior Conviction Under Rule 404(b)

At trial, the Government intends to introduce the transcript of Bogoraz's guilty plea to fraud and money laundering conspiracy charges in 2013. This evidence is admissible under Rule 404(b).[4]

#### A.  Relevant Facts

On June 25, 2013, Bogoraz pled guilty to a Scheme to Defraud in the First Degree and Money Laundering in the Second Degree in violation of New York law (the "2013 Scheme") in New York Supreme Court. In connection with his plea, Bogoraz and the Court had the following colloquy:

> THE COURT:  So under Count 1, do you admit that you engaged in a scheme constituting a systematic, ongoing course of conduct with intent to defraud more than one person and to obtain property from more than one person by false and fraudulent pretenses, representations and promises, and so obtained property with a value in excess of $1,000 from one or more such persons and you did that in the County of Kings from about July 5, 2006, to on or about December 21, 2010; is that true, sir?

---

[3] As the Court is aware, the defendant must first demonstrate that calling Agent-1 is for a proper purpose pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and 28 C.F.R. § 16.21 *et seq.* Even if the defendant can demonstrate a proper basis to call Agent-1 as a witness, it does not expand the scope of what is permissible during cross-examination in the Government's case-in-chief.

[4] The Government does not intend, at this time, to introduce evidence in its case-in-chief that Weiner's practice was illegally controlled by an individual named Yan Moshe from approximately 2010 to 2014. However, the Government will seek to introduce such evidence if the defendant testifies or the defense calls a witness in its case-in-chief who was familiar with the earlier fraud.

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Also, for Money Laundering in the Second Degree, that you, knowing that the property involved in one or more financial transactions represented the proceeds of specified criminal conduct, that you conducted one or more such financial transactions which, in fact, involved the proceeds or specified criminal conduct knowing that the transaction or transactions, in whole or in part, were designed to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified criminal conduct and the total value of the property involved in such financial transaction or transactions exceeded $100,000, and you did that in the County of Kings during the period from on or about October 10, 2006, to on or about December 31, 2009; is that true, sir?

THE DEFENDANT:  2010, I believe, your Honor.

THE COURT:  2010.  Is that true?

THE DEFENDANT:  Yes, your Honor.

. . . .

THE COURT:  Mr. Bogoraz, as you have seen in the plea agreement, it's also alleged that you engaged in a no-fault insurance-fraud scheme wherein you schemed to defraud auto insurance companies of millions of dollars which you then laundered.  You're not a doctor, but you fraudulently opened and controlled radiology professional corporations and then fraudulently billed no-fault insurance companies for reimbursements.  You concealed your illegal ownership of your radiology professional corporations in a collections law firm and diverted the proceeds of your insurance fraud to yourself through a money-laundering scheme.

As a result of your scheme from July 2006 to April 2010, you stole over $8 million from insurance companies; of that money, you cashed over a million dollars at check-cashing stores and withdrew over a half million dollars in cash directly from the medical P.C.'s bank accounts.  Initially, you rented space at an MRI facility, and then in 2007, you bought an MRI facility located at 9501 103rd Avenue in Queens County that catered to no-fault patients.

In order for you to profit from owning and operating the MRI facility, you needed to control the radiology P.C.'s that billed for the MRIs taken at your facility.  You accomplished this by having doctors read MRIs for you and then fraudulently incorporating the P.C.'s in the doctors' names and opening bank accounts in the professional corporations' names. In general, you persuaded doctors to work with you by promising them a fee for each MRI they reviewed and interpreted and for each report they wrote.  Once the doctors agreed to work for you, you were given access to their personal information, you took their personal information and

13

directed that radiology P.C.'s be incorporated in the doctors' names, often without the doctors' knowledge or permission.   You then used those professional corporations to bill the insurance companies.

After creating the P.C.'s, you opened bank accounts under the professional corporations' names, often without the doctors' knowledge or permission.   When you opened the bank accounts, you sometimes forged the doctors' names and used their personal information, such as medical licenses, driver's licenses, Social Security numbers and birthdays. You did this so that you could control the insurance payments, the bank accounts and the money.   You worked from your office located at 2687 Coney Island Avenue in Kings County.  Is all that true, sir?

THE DEFENDANT:  Yes, your Honor.

### B.  Relevant Law

#### 1.  Rule 404(b)

Evidence of a defendant's prior crimes, wrongs, or acts are admissible under Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Second Circuit follows an "inclusionary approach" under which "prior act evidence is admissible for any purpose other than to show a defendant's criminal propensity." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017). Such evidence is admissible if (i) advanced for a proper purpose; (ii) relevant to the crimes for which the defendant is on trial; (iii) more probative than prejudicial; and (iv) admitted subject to a limiting instruction, if such an instruction is requested. *See United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990). Other act evidence is routinely admitted "to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *Dupree*, 870 F.3d at 76 (citing *Diaz*, 176 F.3d at 79).

14

### 2. Rule 403

Whether evidence is admitted as direct evidence or under Rule 404(b), the probative value of such evidence must not be "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The touchstone of the prejudice analysis under Rule 403 is whether the proffered evidence of uncharged acts does "not involve conduct any more sensational or disturbing than the crimes with which [the defendant is] charged." *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). To the extent that there is any risk of unfair prejudice from otherwise probative evidence, the Court may provide limiting instructions to remind the jury that the defendant is not on trial for any offense other than the crimes charged. *See United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice); *see generally United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions.").

### C. Discussion

Bogoraz is charged in the *Pierre* indictment with bribery and money laundering conspiracy offenses. At trial, the Government intends to call CW-1, who delivered bribe payments to hospital employees, 911 operators, and other individuals in return for confidential information of motor vehicle accident victims. CW-1's call center then contacted victims, lied to them, and steered them to medical facilities and law firms that paid kickbacks for the referrals. CW-1 will testify, among other things, that Bogoraz worked at a law firm and personally paid CW-1 for the unlawful

referrals. CW-1 will further testify that he told Bogoraz that CW-1 was paying bribes as part of the referral-kickback scheme. To hide the kickback payments, which were the proceeds of the bribes, Bogoraz helped CW-1 set up two shell companies. Bogoraz then wrote checks to these shell companies describing the payments as "medical records retrieval" to hide the true nature of the payments.

The 2013 Scheme is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The core of Bogoraz's defense at trial will be that he acted in good faith—*i.e.*, Bogoraz did not know or believe that CW-1 was referring victims to Bogoraz's law firm through criminal means. When a defendant claims that he "acted in good faith and not with an unlawful intent," other act evidence "is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." *United States v. Kaufman*, No. 19-CR-0504 (LAK), 2021 WL 51521, at *2 (S.D.N.Y. Jan. 6, 2021) (quoting *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993)); *see also United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (finding other act evidence admissible under Rule 404 (b) where "it tended to rebut [defendant's] contention that he acted in good faith").

Here, the similarities between the 2013 Scheme and the charged bribery and money laundering conspiracies powerfully rebut any good faith defense:

- In both schemes, Bogoraz sought to exploit New York's no-fault automobile insurance laws for personal profit.

- In both schemes, Bogoraz accomplished his ends through bribery. In the 2013 Scheme, Bogoraz "persuaded doctors to work with [him] by promising them a fee for each MRI they reviewed and interpreted and for each report they wrote." In the charged bribery scheme, Bogoraz used CW-1 to funnel bribes to 911 operators and hospital employees.

16

- In both schemes, Bogoraz targeted people's personally identifying information. In the 2013 Scheme, Bogoraz took doctors' "personal information and directed that radiology P.C.'s be incorporated in the doctors' names, often without the doctors' knowledge or permission." In the charged bribery scheme, Bogoraz used CW-1 to take motor vehicle accident victims' personally identifying information so that they could be contacted, lied to, and steered to Bogoraz's law firm.

- In both schemes, Bogoraz hid his involvement through money laundering. In the 2013 Scheme, "opened bank accounts under the professional corporations' names, often without the doctors' knowledge or permission" to "control the insurance payments, the bank accounts and the money." In the charged money laundering scheme, Bogoraz helped CW-1 open bank accounts for shell companies to hide the fact that Bogoraz's kickbacks to CW-1 were proceeds of bribery.

Indeed, were that not sufficient, Bogoraz also joined the charged bribery and money laundering conspiracies within *months* of being released from prison in connection with the 2013 Scheme.

Moreover, the Second Circuit does not require that other schemes be identical under Rule 404(b) to be admissible. Instead, the evidence need only be "relevant in that it provides a reasonable basis for inferring knowledge or intent." *United States v. Cadet*, 664 F.3d 27, 32-33 (2d. Cir. 2011) ("Evidence of other acts need not be identical to the charged conduct to show knowledge or intent pursuant to Rule 404(b), so long as the evidence is relevant in that it provides a reasonable basis for inferring knowledge or intent."); *Dupree*, 870 F.3d at 77 ("The mere fact that the Maryland acts and the charged conduct did not involve exactly the same co-conspirators, cocaine amounts, sales locations, or temporal timelines does not overcome the similarity between the two sets of acts or render Grigger's testimony insufficiently relevant or probative."); *United*

*States v. Flom*, 763 F. App'x 27, 30 (2d Cir. 2019) (affirming admission of the defendant's participation in an earlier uncharged money-laundering scheme under Rule 404(b) in prosecution for money laundering); *United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (affirming admission of defendant's participation in prior securities fraud scheme under Rule 404(b) in prosecution for wire fraud); *United States v. Santoro*, 302 F.3d 76, 82-83 (2d Cir. 2002) (upholding admission of evidence regarding ties of stock promoter to organized crime under Rule 404(b) to rebut defendant's claim of ignorance of securities fraud).

Bogoraz's guilty plea to the 2013 Scheme is also not unduly prejudicial. The fact that the 2013 Scheme is highly probative to the factors identified in 404(b)—motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident—does not make it *unduly* prejudicial. All probative evidence involves prejudice to the defendant. Instead, "the prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).

Here, by contrast, the 2013 Scheme did not involve "conduct any more sensational or disturbing than the crimes" for which Bogoraz is charged—namely, the bribery and money laundering conspiracy. *Zapata*, 916 F.2d at 804. The charged bribery and money laundering conspiracy targeted substantially more victims (tens of thousands of victims had their personally identifying information stolen), lasted longer (almost 4 years), and, most significantly, adversely affected victims' medical care. Courts have routinely admitted similar evidence under Rule 404(b) because it would not improperly inflame the passions of the jury. *See, e.g.*, *id.* (affirming admission of prior narcotics conviction for the purpose of showing the defendant's knowledge of drug selling and his intent to engage in it); *United States v. Atuana*, 816 F. App'x 592, 595 (2d Cir. 2020)

(affirming admission of uncharged acts of fraud and tax evasion in prosecution for wire fraud and bank fraud because the evidence was not "any more sensational or disturbing" than the charged crimes); *United States v. Johnson*, No. 21-CR-428 (ER), 2023 WL 5632473, at *18 (S.D.N.Y. Aug. 31, 2023) (affirming admission of federal conviction for tax crimes under Rule 404(b) in fraud prosecution under same rationale).

Lastly, the Court can cure any minimal prejudice with a limiting instruction to remind the jury that Bogoraz is not on trial for any offense other than the crimes charged. *See Tussa*, 816 F.2d at 68 (limiting instruction sufficient to preclude prejudice); *see generally Snype*, 441 F.3d at 129 ("[T]he law recognizes a strong presumption that juries follow limiting instructions.").

## V.    Evidence that Bradley Pierre Controlled Several Medical Facilities Between 2008 and 2015 Is Admissible as Background for the Charged Healthcare Fraud Conspiracy

The Government intends to call two additional cooperating witnesses ("CW-2" and "CW-3") to testify that Bradley Pierre controlled their medical practices and coached them to lie to insurance companies in Examinations Under Oath between 2008 and 2015, and 2011 and 2014, respectively. This evidence is admissible against Weiner to inform the jury about the background and formation of the charged conspiracy.

"In conspiracy cases, specifically, evidence of other crimes committed by defendants *or* coconspirators may be admitted 'to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed (emphasis added).'" *United States v. Torres*, 435 F. Supp. 3d 526, 530 (S.D.N.Y. 2020) (quoting *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000)). Thus, for instance, in *United States v. Shkolir*, 182 F.3d 902 (2d Cir. 1999), the Second Circuit affirmed the introduction of evidence of multiple frauds, predating the

19

charged conspiracy, by the defendant's coconspirators because the "frauds, which contained similar participants, victims, and fraudulent methods to the [charged] fraud, could help the jury understand the formation of the conspiracy by the other participants." Similarly, in *United States v. Levin*, the Court allowed undercover recordings relating to prior criminal convictions of co-conspirators under Rule 404(b) because it "may be probative of the organization of the charged fraudulent scheme and the plans and formula for success." No. 15 CR. 101 (KBF), 2016 WL 8711458, at *12 (S.D.N.Y. Jan. 8, 2016).

Here, Bradley Pierre's long history of controlling medical clinics and coaching doctors to lie during Examinations Under Oath is critical background for the charged conspiracy. CW-2 and CW-3's testimony will help the jury understand the basic elements of the charged healthcare fraud by explaining to the jury the New York's No-Fault rules regarding physician ownership and purpose of EUOs. Moreover, as in *Shkolir*, the frauds involving CW-2 and CW-3 have the same participants (doctors), same victims (motor vehicle accident victims and no-fault insurance companies), and same fraudulent methods (non-physician control of medical practices and lies during EUOs) as the charged conspiracy between Pierre and Weiner. As such, they will "help the jury understand the formation of the [charged] conspiracy," *Shkolir*, 182 F.3d at 902, and are "probative of the organization of the charged fraudulent scheme and the plans and formula for success," *Levin*, 2016 WL 8711458, at *12.

Moreover, CW-2 and CW-3's testimony is not unduly prejudicial. These frauds did not involve "conduct any more sensational or disturbing than the crimes" for which Weiner is charged—namely, the healthcare fraud and money laundering conspiracy. *Zapata*, 916 F.2d at 804. Likewise, these frauds did not involve medically unnecessary services—unlike the charged healthcare fraud involving Weiner. Similarly, the Court can cure any minimal prejudice with a

limiting instruction to remind the jury that Weiner is not on trial for any offense other than the crimes charged. *See Tussa*, 816 F.2d at 68; *Snype*, 441 F.3d at 129.

## VI.    The Court Should Permit an Insurance Company Representative to Testify about Materiality

As the Court is aware, Bradley Pierre and William Weiner are charged with making materially false statements to insurance companies. At trial, the Government intends to call a representative from Farmers Insurance Company (the "Representative") to testify about New York's No-Fault laws and how insurance companies enforce those rules through Examinations under Oath ("EUOs"). The Government anticipates that the Representative will testify that practitioners are required to verify on bills to insurance companies that they are the sole owners of the medical practices. The Representative will further testify that the answer to this question is material because an insurance company can deny payment if non-physicians are exercising substantial control over the physicians' medical practices. The Representative will further testify that insurance companies typically ask medical practitioners in EUOs questions about the finances and ownership of the practices to determine whether non-physicians are improperly exercising control. These questions include, among other things, how physicians obtain patients, who the physicians are paying, and how much money the physicians are paying themselves. Insurance companies also frequently ask for practitioners' tax returns to verify this information. These questions are proper to show that Weiner's false statements to insurance companies on bills and during EUOs were material.[5]

---

[5] The Government may also ask hypothetical questions about what Farmers Insurance Company would have done had it been aware of certain information. This is proper to establish materiality. "A witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior." *United States v. Cuti*, 720 F. 3d 453, 459 (2d Cir. 2013). "'[W]hat-if-you-had known' questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud." *Id.*

## VII.   The Court Should Preclude Cross-Examination into Irrelevant and Prejudicial Topics

The Government anticipates that defense counsel may seek to cross-examine witnesses about irrelevant and prejudicial topics. The Court should preclude any such examination under Rules 401 and 403.

### A. The Court Should Preclude Cross-Examination About Extramarital Affairs

The Government first anticipates that defense counsel may seek to cross-examine cooperating witnesses about extramarital affairs. "Evidence of an affair is not particularly probative of a witness's character for truthfulness, and is often unduly prejudicial, justifying exclusion under Rule 403." *United States v. Giovinco*, No. 18-CR-14 (JSR), 2020 WL 832920, at *3 (S.D.N.Y. Feb. 20, 2020), *aff'd sub nom. United States v. Esposito*, No. 20-2143-CR, 2021 WL 5492935 (2d Cir. Nov. 23, 2021); *see United States v. Siraj*, No. 05-Cr-104, 2006 WL 2738952, at *1 (E.D.N.Y. Sept. 25, 2006) (precluding cross-examination of a witness concerning his extramarital affair because it was not "probative of the witness's truthfulness or untruthfulness" and had a "prejudicial impact"); *United States v. Ostrer*, 422 F. Supp. 93, 98 (S.D.N.Y. 1976) (finding that evidence of an extramarital affair is usually of little value to impeach a witness); *Rosario v. City of New York*, No. 18 CIV. 4023 (LGS), 2021 WL 9455782, at *3 (S.D.N.Y. Nov. 23, 2021), *opinion clarified,* No. 18 CIV. 4023 (LGS), 2022 WL 3098305 (S.D.N.Y. Aug. 4, 2022) ("Defendants may not elicit evidence of Plaintiff's infidelity as it has no probative value and is prejudicial").  Accordingly, consistent with well-established precedent in this district, the Court should preclude cross examination of the cooperation witnesses about extramarital affairs.

22

**B. The Court Should Preclude or Limit Cross-Examination of CW-1 About an Irrelevant Drug Conviction that Is Thirty Years Old**

The Government anticipates that defense counsel may seek to cross-examine CW-1 about an irrelevant drug conviction from nearly thirty years ago. In 1994, when CW-1 was approximately 25 years' old, CW-1 pleaded guilty to conspiracy to distribute narcotics and was sentenced to 148 months' imprisonment. CW-1 was released in or about 2007. CW-1 is now 56 years old. The Court should preclude cross-examination about this irrelevant conviction under Rule 609.

Under Rule 609 of the Federal Rules of Evidence, evidence of a witness's prior convictions can be admitted for impeachment purposes, subject to certain limitations. Rule 609 makes clear that "[e]vidence of a conviction . . . is not admissible if a period of more than ten years has elapsed since the date of the conviction . . . unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). Rule 609(b) places "the greater burden" on the party seeking to use the old convictions. *United States v. Weichert,* 783 F.2d 23, 26 n. 3 (2d Cir.1986). Through Rule 609(b), Congress intended "that convictions over ten years old be admitted very rarely and only in exceptional circumstances." *Zinman v. Black & Decker,* 983 F.2d 431, 434 (2d Cir. 1993). The Second Circuit has further held where, as here, a narcotics conviction is decades-old, the "conviction has little necessary bearing on the veracity of the accused as a witness." *United States v. Puco*, 453 F.2d 539, 543 (2d Cir. 1971). As the Second Circuit reasoned, "crimes which involve fraud or stealing 'reflect on honesty and integrity and thereby on credibility.'" *Id.* (quoting *United States v. DiLorenzo*, 429 F.2d 216, 220 (2d Cir. 1970)). On the other hand, a decades-old narcotics "conviction had little bearing on testimonial trustworthiness." *Id.*

23

Here, CW-1's decades-old narcotics conviction predates the charged bribery conspiracy by almost twenty years and has nothing to do with the offense conduct in this case. CW-1's cooperation agreement does not confer CW-1 any benefit with regard to this prior conviction. Moreover, this is not a trial about narcotics. It is a trial about bribery, healthcare fraud, and money laundering. The sole purpose of cross-examination on this topic would be to inflame the passions of the jury and improperly attack CW-1's character as a "drug dealer." This is precisely the type of prejudicial argument that is prohibited by Rules 403 and 404.

In the alternative, if the Court does allow cross-examination into the narcotics conviction, it should be limited to the date of the conviction, the type of conviction (narcotics trafficking), and the sentence. The Court should prohibit counsel from eliciting the irrelevant and inflammatory details about the conviction, including the length, location, and quantity of narcotics distributed.

### VIII.   The Court Should Preclude the Defendants from Introducing Evidence and Arguments That Are Irrelevant and Unfairly Prejudicial

The Government is unaware of any lawful basis for the defendants to offer evidence or argument concerning their family backgrounds, health, ages, or any other similar factors. They should be precluded from doing so, and from mentioning such subjects in their opening statement, absent a showing that such a factor bears on their guilt. *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *see also United States v. Harris*, 491 F.3d 440, 447-48 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

The defendants should similarly be precluded from offering evidence or argument concerning the punishment or consequences they face if convicted. In cases like this, where the jury has no role at sentencing, it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.*

Likewise, the Government anticipates that Weiner's counsel will argue in their summations, as they have in their court filings, that Weiner prior to criminal charges had "an unblemished record." *See* Dkt. 107 at 1. This is improper. It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990). Similarly, while a defendant may offer general testimony from a character witness about his reputation for a "pertinent trait of character," or the witness's opinion of the defendant regarding that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *United States v. Fazio*, No. S2 11 CR 873, 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012) ("a defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir.

2014); *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (precluding evidence of charitable giving).

## **CONCLUSION**

For the foregoing reasons, the Government's motions *in limine* should be granted in their entirety.

Dated:  New York, New York
        December 15, 2023

                                          Respectfully submitted,

                                          DAMIAN WILLIAMS
                                          United States Attorney
                                          Southern District of New York


                                    By: _____/s/_____
                                          Mathew Andrews
                                          Qais Ghafary
                                          Michael Lockard
                                          Assistant United States Attorneys
                                          Southern District of New York
                                          (212) 637-6526 / 2617 / 2193