*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

<i>The Silvio J. Mollo Building<br>
One Saint Andrew's Plaza<br>
New York, New York 10007</i>

August 14, 2024

**VIA ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

               Re:     <u>*United States v. Arthur Bogoraz,*
                                    22 Cr. 19 (PGG)</u>

Dear Judge Gardephe:

      The Government writes in connection with the hearing in the above-captioned matter scheduled for August 16, 2024 at 9:30am. The Court has ordered the testimony of prior defense counsel, Aaron Rubin. On August 13, 2024, the parties reached two unforeseen yet material disagreements requiring resolution by the Court. *First*, the parties disagree about the scope of the defendant's privilege waiver. *Second*, the parties disagree about whether the defense must produce statements of Mr. Rubin in their possession that relate to the subject matter of Mr. Rubin's testimony pursuant to Federal Rule of Criminal Procedure 26.2.

      In particular, on August 13, 2024, the Government sent an email to the defense asking when the Government would receive materials from the defense pursuant to Rule 26.2. Based on the court filings by the defense, the Government sought at a minimum the following:

1. Any communications between Mr. Rubin and the defendant relating to discovery;
2. Any communications between Mr. Rubin and the defendant relating to the Government's plea offer;
3. Any communications between Mr. Rubin and the defendant relating to the motions filed after the rejected plea offer, including the allegations that the Government acted in bad faith; and
4. Any communications between Mr. Rubin and the defendant relating to the other matters discussed in the defendant and Mr. Rubin's sworn affidavits.[1]

---

[1] On June 25, 2024, Mr. Ruben sent defense counsel an email describing Mr. Rubin's anticipated testimony. The Government also seeks any communications between Mr. Rubin and the defendant relating to the subjects described in Mr. Rubin's email.

The defense responded the same day that they did not believe that Rule 26.2 applied to the hearing, that the Government was requesting materials outside the scope of the privilege waiver, and that the defense would not be producing the requested materials. The defense agreed to produce, as a courtesy, two emails from Mr. Rubin to current defense counsel.

The parties have conferred in good faith about their respective positions. Unfortunately, the parties have reasonable disagreements about the scope of the privilege waiver and what materials the defense is obligated to produce prior to cross-examination. The Government notified the defense the same day, August 13, 2024, that it intended to file the instant motion with the Court.

For the reasons set forth below, the Government respectfully submits that the Government's document requests are within the scope of the privilege waiver and Rule 26.2. If the Court finds that Rule 26.2 does not apply to the instant hearing, the Government respectfully requests in the alternative that the Court so-order narrowly tailored subpoenas to the defendant and Mr. Rubin seeking statements of Mr. Rubin in their possession that relate to the subject matter of Mr. Rubin's anticipated testimony.

### 1. The Government's Requests Fall within the Scope of the Privilege Waiver

It is well-established that when a defendant "raises a claim of ineffective assistance of counsel, the petitioner waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." *Douglas v. United States*, No. 09 Civ. 9566 (CM), 2011 WL 335861, at *1 (S.D.N.Y. Jan. 28, 2011) (citing cases); *see also, e.g.*, *Aladino v. United States*, No. 09 Civ. 926 (CBA), 2011 WL 6131175, at *2 (E.D.N.Y. Dec. 8, 2011) ("In cases where a habeas petitioner alleges ineffective assistance of counsel, courts routinely find that the petitioner puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications" (citing cases)); *Cannonier v. United States*, Nos. 15 Cr. 95 (AJN), 18 Civ. 8764 (AJN), 2021 WL 809343, at *2 (S.D.N.Y. Mar. 3, 2021) (Nathan, *J.*) ("Due to the nature of Cannonier's ineffective assistance of counsel claims, the Government requested an order allowing Cannonier's prior counsel to submit a statement responding to his allegations of ineffective assistance. … The Court granted the Government's request …."); *United States v. Gallego*, No. 95 Cr. 284 (LAK), 1996 WL 662904, at *1 (S.D.N.Y. Nov. 13, 1996) (Kaplan, *J.*) ("By moving for a new trial based on the alleged ineffectiveness of counsel, Martinez put in issue various communications between himself and his counsel and, at least to that extent, waived his attorney-client privilege."); *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009) ("Given the ample, unanimous federal authority on point, we hold that when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim.").[2]

---

[2] "The implied privilege waiver should only extend … 'to confidential information that is needed to defend against the prisoner's specific claims.'" *Aladino*, 2011 WL 6131175, at *3 (citation omitted).

2

Bogoraz has explicitly placed at issue his communications with counsel in alleging that his attorney provided ineffective assistance. Bogoraz not only filed an affidavit with his instant motion, but also consented to Mr. Rubin providing two sworn affidavits to the Government. Mr. Rubin's affidavits are attached as <u>Exhibits A and B</u>. The Government's document requests fall within the scope of the privilege waiver based on these materials.

a. <u>Any communications between Mr. Rubin and the defendant relating to discovery</u>. Bogoraz' affidavit states in relevant part, "It was further my understanding from speaking with prior counsel in October 2023 that there was no basis in the discovery materials that had been produced in this case for the Government to obtain a superseding Indictment charging me with a money laundering offense." *See* Dkt. 444-2 ¶ 10. Likewise, Mr. Rubin's supplemental affidavit to the Government states in relevant part, "Until at least December 2023, I mistakenly believed that I was in possession of all of the discovery materials for Mr. Bogoraz in the Pierre case . . . ." *See* Exhibit B ¶ 5.

b. <u>Any communications between Mr. Rubin and the defendant relating to the Government's plea offer</u>. Bogoraz' affidavit states in relevant part, "In the days immediately following October 13, 2023, I discussed the Plea Offer at length with my prior counsel. Among other things, I sought his advice on the risks of turning down the Plea Offer." *See* Dkt. 444-2 ¶ 7. Likewise, Mr. Rubin's initial affidavit to the Government states in relevant part, "Based on the above, while the Plea Offer was pending, I advised Mr. Bogoraz, in substance, that it was not a realistic possibility that the Government would obtain a viable and timely superseding Indictment against him charging him with money laundering, and thereby increasing his sentencing exposure, if he did not accept the Plea Offer." Exhibit A ¶ 11.

c. <u>Any communications between Mr. Rubin and the defendant relating to the motions filed after the rejected plea offer, including the allegations that the Government acted in bad faith</u>. After the Government obtained a superseding indictment charging the defendant with money laundering offenses, Mr. Rubin filed a series of frivolous motions seeking adjournments of the trial date and alleging Government misconduct. *See e.g.*, Dkt. 276, 280, 310. On January 12, 2024, the Court issued a bench ruling denying Bogoraz' motions and questioning, without deciding, whether these motions were filed in good faith. Mr. Rubin's affidavit has placed his good faith in question by stating in relevant part, "At the time I advised Mr. Bogoraz with respect to the Plea Offer, and at all times that I represented Mr. Bogoraz, I was undertaking to provide him with my honest and considered judgment and to give him the advice that would best protect his interests." Exhibit A ¶ 13.

d. <u>Any communications between Mr. Rubin and the defendant relating to the other matters discussed in the defendant and Mr. Rubin's affidavits</u>. The defendant has placed at issue the communications with counsel discussed in his own affidavit. The defendant has likewise placed at issue his communications with Mr. Rubin by consenting to Mr. Rubin filing two affidavits with the Government discussing said

3

communications. As such, any attorney-client privilege pertaining to the matters discussed in the defendant and Mr. Rubin's sworn affidavits has been waived.

## 2. The Court Should Order Compliance with Rule 26.2 or, in the Alternative, So-Order Narrowly Tailored Subpoenas to the Defendant and Mr. Rubin for Statements of Mr. Rubin in Their Possession that Relate to the Subject Matter of Mr. Rubin's Anticipated Testimony.

The Government further respectfully requests that the Court order the defense to comply with Rule 26.2, consistent with what the Court's January 2024 order scheduling the prior evidentiary hearing. On January 11, 2024, the Court ordered a hearing "to discuss the issues raised in Defendant Bogoraz's letters . . . . related to his failure to receive in 2022 certain discovery materials provided by the Government in United States v. Rose, 19 Cr. 789." Dkt. 366. The Court further ordered that, "[i]n advance of the hearing, the parties . . . are directed to produce to the Court forthwith copies of any emails, letters, or other correspondence bearing on the issues raised in Defendant Bogoraz's letters." *Id.* The January 2024 hearing did not take place (and the defendant did not produce any of the above-described materials) because the defendant opted to plead guilty.

The Government now seeks only what the Court has ordered before: emails, letters, or other correspondence bearing on the issues raised in the defendant's motion. The only difference is that the defendant must produce a wider array of materials because he has waived privilege.

Such an order—like the Court's January 2024 order—is consistent with the requirements of Rule 26.2. Rule 26.2 requires that "[a]fter a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a). To be sure, Rule 26.2 does not explicitly apply to the unusual procedural posture here: a motion to withdraw a plea under Rule 11(d). Instead, the Rule states in relevant part:

> (g) Scope. This rule applies at trial, at a suppression hearing under Rule 12, and to the extent specified in the following rules:
> (1) Rule 5.1(h) (preliminary hearing);
> (2) Rule 32(i)(2) (sentencing);
> (3) Rule 32.1(e) (hearing to revoke or modify probation or supervised release);
> (4) Rule 46(j) (detention hearing); and
> (5) Rule 8 of the Rules Governing Proceedings under 28 U.S.C. §2255.

Fed. R. Crim. P. 26.2(g). Nonetheless, there is a reason that Rule 26.2 does not explicitly include Rule 11(d). Unlike the rules enumerated above, Rule 11(d) does not expressly authorize hearings.[3]

---

[3] *See* Fed. R. Crim. P. 11(d) ("Withdrawing a Guilty or Nolo Contendere Plea. A defendant may withdraw a plea of guilty or nolo contendere: (1) before the court accepts the plea, for any reason or no reason; or (2) after the court accepts the plea, but before it imposes sentence if: (A) the court

Rule 26.2 accordingly does not omit Rule 11(d) by design. It omits Rule 11(d) because the Rule 11(d) does not specifically authorize hearings.[4]

Moreover, the Advisory Committee Notes to Rule 26.2 plainly show that the rule is applicable to the "adversary type hearing" ordered here under Rule 11(d):

> The reasons given in 1983 for extending Rule 26.2 to a suppression hearing are equally compelling with regard to other adversary type hearings which ultimately depend on accurate and reliable information. That is, there is a continuing need for information affecting the credibility of witnesses who present testimony. And that need exists without regard to whether the witness is presenting testimony at a pretrial hearing, at a trial, or at a post-trial proceeding.

*See* Fed. R. Crim. P. 26.2, Notes of Advisory Committee on Rules—1993 Amendment. The Government has requested a hearing because there are discrepancies between the defendant and Mr. Rubin's statements about the Rose Discovery and the documentary record. *See* Dkt. 447. The Court ordered a hearing to address those discrepancies, and it is nonsensical to conduct the hearing without information affecting the credibility of witnesses who present testimony.

Indeed, Rule 26.2 on its face applies to hearings to resolve ineffective assistance claims raised after sentencing pursuant to 28 U.S.C. §2255. *See* Fed. R. Crim. P. 26.2(g)(5). The only difference here is that the defense is raising an ineffective assistance claim *before* sentencing pursuant to Rule 11(d). The question raised by both hearings is the same—should the defendant be allowed to withdraw his plea. The importance of information affecting witness credibility for both hearings is the same. As such, it is nonsensical to apply Rule 26.2 to post-sentence ineffective assistance hearings but reject the rule for pre-sentence ineffective assistance hearings.

Finally, in the event that the Court decides that it lacks the authority to compel compliance with Rule 26.2, the Government respectfully requests that the Court so-order narrowly tailored subpoenas to the defendant and Mr. Rubin for any statements of Mr. Rubin in their possession that

---

rejects a plea agreement under 11(c)(5); or (B) the defendant can show a fair and just reason for requesting the withdrawal.").

[4] The Government notes that the Court has inherent authority to hold evidentiary hearings. The Court's decision to do so here is entirely proper.

relate to the subject matter of his testimony. The Government can provide subpoenas to the Court upon request.

                Respectfully submitted,
                DAMIAN WILLIAMS
                United States Attorney

By:        /s/
                Mathew Andrews
                Michael Lockard
                Qais Ghafary
                Assistant United States Attorney
                Tel.   (212) 637-6526

# Exhibit A

## Affidavit of Aaron Rubin, Esq.

Aaron Rubin, Esq. hereby declares under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I was counsel for defendant Arthur Bogoraz in the case *United States v. Bradley Pierre et al.*, 19 Cr. 22 (PGG), pending before the Hon. Paul G. Gardephe in the United States District Court for the Southern District of New York, from the time Mr. Bogoraz was charged in the case until the substitution of counsel entered on the docket on January 26, 2024.

2. I am submitting this affidavit to the United States Attorney's Office for the Southern District of New York in support of Mr. Bogoraz's request that the Government consent to his withdrawing the guilty plea that he entered in this case on January 16, 2024 and extend to Mr. Bogoraz, for a period of no more than 12 hours, an offer of a plea agreement for conspiracy to commit Travel Act bribery, as charged in Count Four of the S3 Indictment, in violation of Title 18, United States Code, Section 371. This would be substantially the same plea agreement that was offered to Mr. Bogoraz on October 13, 2023, which he did not accept.

3. Mr. Bogoraz was one of five defendants charged in this case on or about January 11, 2022. The original Indictment contained four counts: for conspiracy to commit healthcare fraud (Count One), conspiracy to commit money laundering (Count Two), conspiracy to commit Travel Act bribery (Count Three), and aggravated identity theft (Count Four). Mr. Bogoraz was charged only in Count Three.

4. On or about June 26, 2023, the grand jury returned a superseding Indictment (the "S2 Indictment') against the same five defendants, containing five counts: conspiracy to commit health care fraud (Count One), conspiracy to commit money laundering (Count Two), conspiracy to commit Travel Act bribery (Count Three), aggravated identity theft (Count Four), and

1

conspiracy to defraud the United States (Count Five). Mr. Bogoraz was charged only in Count Three, which was the same charge as the prior indictment with no additions.

5. On or about October 13, 2023, the Government extended a plea offer to Mr. Bogoraz in this case (the "Plea Offer"). The Offer contemplated that he would enter a guilty plea to Count Three of the Indictment (conspiracy to commit Travel Act bribery). Count Three carried a statutory maximum penalty of five years' imprisonment. The Plea Offer stated that his Sentencing Guidelines range would have been 188 to 235 months' imprisonment were it not for the five-year statutory maximum applicable to the offense.

6. My understanding as of the time the Plea Offer was extended, and the understanding I conveyed to Mr. Bogoraz, was that it would expire on or around October 31, 2023.

7. In the days immediately following October 13, 2023, I discussed the Plea Offer at length with Mr. Bogoraz. Among other things, I gave him advice on whether to accept the Plea Offer.

8. It was my professional judgment at the time the Plea Offer was extended that there was not a realistic possibility that, should Mr. Bogoraz reject the Plea Offer, the Government would obtain a superseding Indictment charging him with a money laundering offense and thereby increasing his sentencing exposure, and I advised Mr. Bogoraz accordingly. My judgment was based on a number of factors, including the following.

9. First, in light of the fact that the Government had previously charged other defendants in the same case with money laundering offenses, twice – at the time of the original Indictment and again in the S2 Indictment – I reasoned that if the Government had the evidentiary support to charge Mr. Bogoraz with a money laundering offense and the desire to do so, it would already have done so.

10. Second, based on the Rule 16 discovery that I had reviewed in the case, I did not believe at the time that there was a factual basis in the discovery for the Government to bring a money laundering charge against Mr. Bogoraz.

11. Based on the above, while the Plea Offer was pending, I advised Mr. Bogoraz, in substance, that it was not a realistic possibility that the Government would obtain a viable and timely superseding Indictment against him charging him with money laundering, and thereby increasing his sentencing exposure, if he did not accept the Plea Offer.

12. I believe that Mr. Bogoraz made his decision not to accept the Plea Offer largely based on this advice, and the case proceeded with no additional charges for more than another month.

13. At the time I advised Mr. Bogoraz with respect to the Plea Offer, and at all times that I represented Mr. Bogoraz, I was undertaking to provide him with my honest and considered judgment and to give him the advice that would best protect his interests.

14. On or about December 6, 2023, about five weeks prior to the trial date, the Government obtained a superseding Indictment charging Mr. Bogoraz, in Count Five, with money laundering, thereby subjecting him to a possible sentence of imprisonment far exceeding five years. I realized after the Government obtained this superseding Indictment that my prior assessments in October 2023 that this was not a realistic possibility had been mistaken, and that the advice I gave Mr. Bogoraz about this, and which I believe he relied on, was incorrect, despite my effort at all times to provide Mr. Bogoraz with counsel that was in furtherance of his interests.

I affirm that everything stated above is true and correct.

Executed on April 23, 2024
New York, New York

Aaron Rubin, Esq.

3

# Exhibit B

## Supplemental Affidavit of Aaron Rubin, Esq.

Aaron Rubin, Esq. affirms the following under penalty of perjury:

1. I was counsel for defendant Arthur Bogoraz in the case *United States v. Bradley Pierre et al.*, 19 Cr. 22 (PGG), pending before the Hon. Paul G. Gardephe in the United States District Court for the Southern District of New York, from the time Mr. Bogoraz was charged in the case until the substitution of counsel entered on the docket on January 26, 2024.

2. At the request of the attorney who now represents Mr. Bogoraz, I previously submitted an affidavit to the United States Attorney's Office for the Southern District of New York in support of Mr. Bogoraz's request of that Office to consent to his withdrawing his guilty plea in this case in order to afford an opportunity for the Government to re-extend, and Mr. Bogoraz to accept, the plea offer that he was offered but did not accept in October 2023.

3. I now submit this brief supplemental affidavit, at the request of Mr. Bogoraz's current counsel, to the Court in order to provide additional facts that may be relevant to its consideration of Mr. Bogoraz's motion to withdraw.

4. In September 2023, Assistant United States Attorney Mathew Andrews sent me an email stating, in substance, that if the *Pierre* case proceeded to trial against Mr. Bogoraz, the Government anticipated seeking a superseding indictment against Mr. Bogoraz charging him with money laundering. I forwarded this email to Mr. Bogoraz. However, notwithstanding this email, all of my discussions with Mr. Bogoraz (prior to at least December 2023) concerning the notion of his being charged with money laundering in the *Pierre* case, including discussions I had with him after receiving the above-referenced email from AUSA Andrews and sharing it with him, reflected my view that there was no realistic possibility that the Government would

1

obtain a viable and timely superseding indictment charging Mr. Bogoraz with money laundering in this case, which I communicated to Mr. Bogoraz. I held this view for the reasons discussed in my prior affidavit.

5. Until at least December 2023, I mistakenly believed that I was in possession of all of the discovery materials for Mr. Bogoraz in the *Pierre* case, based in part on an email I received from Julie de Almeida on March 16, 2022 stating that "the review of discovery in this matter is now complete and included on the enclosed flash drive," referencing a hard drive that I had sent to her for the purpose of loading the *Pierre* discovery. I believed that any group discovery for Mr. Bogoraz in the *Pierre* case was included on that hard drive, and that any individual discovery for Bogoraz in the *Pierre* case had been (or was being) produced to me by Ms. Almeida or directly by the Government. I did not believe at any time prior to at least December 2023 and January 2024 that there existed discovery for Mr. Bogoraz in the *Pierre* case that I did not possess or that I had not taken the necessary steps to obtain.

6. I understood, at the beginning of the case, that there existed a related case from 2019 captioned *United States v. Rose* and that the Government had agreed to produce the materials from that case to all the defendants in the *Pierre* case. However, I did not understand that such discovery from the *Rose* case was not being produced in the regular course of my ordering, paying for and obtaining discovery from Ms. Almeida in the *Pierre* case. There was no strategic reason that I did not separately obtain the *Rose* discovery; the reason I did not do so is that I expected and believed that any discovery for Mr. Bogoraz in the *Pierre* case, from *Rose* or otherwise, would be included in the materials produced to me as a consequence of my ordering and obtaining discovery in the *Pierre* case (and because the discovery that I had in fact received

included various materials and files that were expressly ascribed to defendant Rose). This expectation turned out to be incorrect.

7. The advice I gave to Mr. Bogoraz in October 2023 was given without having received or reviewed any discovery from the *Rose* case that had not been otherwise reproduced in the *Pierre* case by either Ms. Almeida or the Government, and without my receiving certain supplemental discovery of financial records that was later made available by the Government in November 2023 related to the money laundering charge.

I affirm that everything stated above is true and correct.

Dated: July 6, 2024
New York, New York

_____
Aaron Rubin, Esq.