UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA

        v.                                      Docket No. 22-cr-19 (PGG)

ALBERT HAFT,

                            Defendant.
--------------------------------------------------------------x

## SENTENCING MEMORANDUM ON BEHALF OF ALBERT HAFT

**Introduction**

On May 18, June 8 and July 6, 2021 Albert Haft appeared pursuant to subpoena and testified before a Grand Jury in the Southern District of New York in connection with the Government's prosecution of Bradley Pierre, Jean Pierre, Marvin Moy, William Weiner and Albert Haft after producing thousands of business records in the form of electronic files related to his preparation of tax returns for the defendants and their businesses.

After meeting with the Government for the purpose of making a proffer, on September 27, 2022 Mr. Haft entered into an agreement with the Government which provided, among other things, for his cooperation in the prosecution of said individuals in connection with their business practices and his preparation of their federal income tax returns by testifying truthfully, attending meetings and producing documents and agreed to plead guilty to an information charging him with tax conspiracies in exchange for protection from further prosecution and, if warranted, filing by the Government of a motion under Section 5K1.1(a)(1)-(5).

Pursuant to the Cooperation Agreement, on October 12, 2022, Mr. Haft pleaded guilty before Your Honor admitting, as to Count 1of a Superceding Information admitting that he "had conversations with Bradley Pierre, Jean Pierre, Marvin Moy, William Weiner and others in the

Southern District of New York and elsewhere during which it was agreed that [he] would prepare and file federal income tax returns which overstated business expenses, took inappropriate business deductions and misrepresented personal expenses as business deductions" and as to Count 2, that between 1990 through 2021 he agreed with others to prepare and submit materially false tax returns to the Internal Revenue Service misrepresenting client's personal income as business expenses.  No dollar amount was attributed to Mr. Haft's admitted misconduct in either of the two Counts.

### Mr. Haft's Cooperation

Thereafter, Mr. Haft fully and completely cooperated with the Government, meeting with Assistant United States Attorneys Mathew Andrews, Michael Lockhard and Qais Ghafary and Internal Revenue Special Agent Nicole Valente on multiple occasions whenever requested and producing all of the documents requested by the government.

Mr. Haft's cooperation was extensive, spending over 30 hours with the prosecution team. Mr. Haft was fully cooperative in providing documents both prior to his Grand Jury appearance in response to subpoenas and during his cooperation. There was never a claim that he failed to produce anything that was required of him.  In all respects, Mr. Haft's cooperation was complete, in good faith and arguably led to guilty pleas before trial and convictions of some or all of the defendants with whom he was involved.

### The Presentence Report

On January 5, 2026, the Probation Office filed a Presentence Investigation Report.  Mr. Haft states that the report inaccurately describes the degree to which he had knowledge of the propriety and magnitude of each individual 's false filings.  In many instances he had no knowledge whether the income was fully reported of the deductions were improper.

After detailing the successful prosecution and conviction of the defendants who were the objects of Mr. Haft's cooperation, Probation Officer Stephanie M. McMahon wrote:

> "the Court may consider a sentence outside of the advisory sentencing in order to provide for a sentence that is sufficient, but not greater than necessary, pursuant to the factors outlined in 18 USC 3553(a). Specifically, the defendant's age, lack of criminal record, and limited involvement in the offense as compared with his co-defendants who were involved in the overarching bribery and money laundering schemes, are all potentially mitigating factors to be considered in imposing sentencing."

(See Pre-sentence Investigation Report P8253023, p. 24)

However, in its final Report, the Probation Office recommended a guideline sentence of 15 months imprisonment and one year of supervised release.

**Mr. Haft's Involvement Was Limited**

Mr. Haft's only involvement with the defendants was to prepare their tax returns. For all of his work for each of the defendants Mr. Haft received only his usual compensation, often traveling to the defendants' offices or, in the case of Dr. Weiner, to his residence. His fees were those that would be charged to any other client. He did not benefit from the conspiracy at all.

He was hired by the ring leader, Bradley Pierre, who undoubtedly evaluated Haft's personality before hiring his to see whether he would do the tax returns the way he wanted them done. Mr. Haft now recognizes that having both Pierre and Weiner as clients was a mistake as they were often in conflict regarding their financial arrangements. Ultimately, Mr. Haft found himself in the middle and foolishly prepared tax returns that reflected income and expenses that were dictated, mostly by Mr. Pierre and accepted, albeit reluctantly, in other instances by Weiner. Albert Haft is responsible for not having a stiffer spine and should have resigned when he felt the pressure to file their tax returns. However, there is no evidence that Mr. Haft was "controlled" by or doing the bidding of Mr. Pierre as has been argued by Dr. Weiner's counsel.

-3-

Mr. Haft will suffer the consequences of his misconduct, not only before this Court, but with the state of New York division of licensing.

**Sentencing Guidelines**

As the Court knows, Title 18 USC §3553 provides that the Court impose "a sentence sufficient but not greater than necessary" to provide just punishment for the defendant and requires the Court to consider "the nature and circumstances of the offense and history and characteristics of the defendant." Pursuant to that section, the Court also must consider the need for the sentence "to reflect the seriousness of the offense [and] to promote respect for the law." 18 USC §3553(a)(l) and (2)(A).

**Mr. Haft is Remorseful**

From my personal involvement with Mr. Haft for over four years, I cannot overstate the degree of shame he has expressed to me and his regret for going along with the defendants' insistence of the legitimacy of their untrue reports to him regarding their income and expenses. He even found it difficult to share his prosecution with his family. Even his son David, a practicing attorney in Florida, until relatively recently, was not aware of the prosecution because Albert couldn't bring himself to tell him about it.

Mr. Haft blames only himself for his predicament. He chose to continue to work for Pierre, Weiner and the others all the while knowing that the deductions they were taking or questionable or worse.

Mr. Haft deeply regrets and is ashamed of his wrongdoing to the extent that he could not bring himself to tell some of his clients of his case, others who are aware of his that he's facing sentencing. However all attest to his kindness and diligence.

In his sentencing memorandum, Dr. Weiner admitted that he was warned by Mr. Haft that taking tax deductions for the entire amounts paid for automobile leases, country club fees and landscaping expenses would be "overly aggressive." Mr. Haft should have resisted the pressure to going along with Dr. Weiner's insistence that these expenses were fully deductible business expenses and he has taken responsibility for failing to do so.

The letters submitted on Mr. Haft's behalf show his kindness and genuine concern for his 1000 clients, the number of which is disclosed in the Presentence Report. The letters are evidence of a humble, kind and thoughtful man. This Court can be sure that he will never again make the mistake of taking a client who is not open and candid with him and fully disclosing their financial information before he files their returns.

**A Sentence of Probation Would Be Adequate and Just to Punish Mr. Haft.**

The Court should not impose a sentence of imprisonment. Title 18 U.S.C. §3553 provides that the Court should impose "a sentence sufficient but not greater than necessary" to provide just punishment for the defendant and requires the Court to consider "the nature and circumstances of the offense and history and characteristics of the defendant." Pursuant to that Section, the Court also must consider the need for the sentence "to reflect the seriousness of the offense, [and] to promote respect for the law." 18 U.S.C. §3553(a)(1) and (2)(A). These sections of the Code direct the Court to consider the defendant and his actions cumulatively, and to "provide just punishment for the offense" in light of all of the facts known to the Court.

Given his minor role, coupled with his early cooperation and then entering into an agreement to provide information, a sentence of probation to assure that Mr. Haft continues to be in compliance with the law and any fine and restitution the Court may decide to impose is more than needed for punishment and deterrence.

**Mr. Haft's Crimes Do Not Require a Sentence of Incarceration**

Mr. Haft's conduct should not be viewed not the same light as the other defendants. To sentence Mr. Haft for an uncharged crime of conspiring with Mr. Pierre to defraud Dr. Weiner based solely on the arguments of Dr. Weiner's counsel would be manifestly unfair. Under the terms of his cooperation agreement, had the government determined that Mr. Haft was untruthful with respect to his dealings with the co-defendants it had the right to charge him with additional crimes which it has not done.

**Mr. Haft's Grand Jury Testimony**

The Court directed the disclosure of Mr. Hafts's grand jury testimony in response to the question raised in the Presentence Report regarding Mr. Haft's possible perjury in the grand jury.

**Dr. Weiner's Fraud Allegations**

Initially, it must be noted that according to Mr. Haft, Dr. Weiner continually complained to him about the management fees Mr. Pierre was charging him.  It was Dr. Weiner's dependence on Mr. Pierre for his business that allowed the latter to take advantage of him; he didn't need Mr. Haft's help.  On June 30, 2022, five month's after his arrest, Dr. Weiner caused Nexray to commence a lawsuit against Mr. Pierre's Medical Reimbursement Consultants, Inc. based on the alleged "financing agreement" which the parties used to disguise the real business relationship between them.  He did not sue Mr. Haft.

In his initial pre-sentence memorandum, Dr. Weiner's counsel attempted to minimize his client's criminal conduct by blaming Mr. Haft for "worthless reports filled with false entries" and "the Haft/Pierre scheme to defraud [Dr. Weiner]" (ECF 418 filed 5/28/24).

As a result, the Court and has asked defense counsel and the Government address "Weiner's allegations that Haft assisted Pierre in defrauding Weiner and then falsified evidence to conceal [Haft's] role in helping Pierre to defraud Weiner."

But the Declaration of his expert, Thomas E. Bishop [ECF 418-8] states "[in] some instances, it appears that . . . Albert Haft, made *mistakes*, which I assume can be attributed to *sloppiness, negligence, apathy, or a combination of all three*." (Emphasis added) [Id at p.2]  The sole basis of for Mr. Bishop's allegation are corrections that he discovered that Mr. Haft made in 2022 and 2023 to Nexray's 2017 financial records by examining the audit trail in the Quickbooks program.  The Quickbooks file had been produced by Mr. Haft to the Government and turned over as 3500 material.  The tax return did not tie in to the Quickbooks file.  Regardless, that does not prove that Dr. Weiner's tax liability was based on Mr. Haft's having taken direction from Mr. Pierre.  It was more likely due to *"sloppiness, negligence, apathy, or a combination of all three*."

When the government reviewed Nexray's 2017 Quickbooks file produced by Mr. Haft, it was brought to Mr. Haft's attention that the entries for expenses in the file did not agree with the 2017 tax return.  Mr. Haft explained that he inadvertently had produced an incomplete Quickbooks backup file from a thumb drive.  He then took it upon himself on several occasions, when confronted with the discrepancies, to make the entries so that the Quickbooks file agreed with the tax returns.

There is no proof that Mr. Haft profited by even one dollar or had any other motive to defraud Dr. Weiner.  There is no claim that Dr. Weiner did not have access to his tax returns or the resources to have others review them.  Given the overwhelming evidence that Mr. Pierre was running all aspects of Dr. Weiner's medical business, he is at least as culpable as Mr. Haft for

-7-

relying on Mr. Pierre's representation.  In the final analysis, even were these transactions to be viewed in the most unfavorable light, the wrongdoing would be recoverable in a civil action.

**Conclusion**

Unlike the other defendants, Mr. Haft admitted his wrongdoing early in the process and fully cooperated with the prosecution.  As his financial record disclosure shows, he will have little in the way of recoverable assets and likely will be unable to work as an accountant in the future.  In this case, imprisonment is not needed as a deterrent, to protect the public or to promote rehabilitation.  Mr. Haft has and will suffer the shame and consequences of his wrongdoing for years to come.

Dated:  Commack, New York
         February 4, 2026

Respectfully submitted,

Lawrence H. Silverman (2353)
Attorney for Defendant Albert Haft
350 Veterans Memorial Hwy
Commack, New York 11725
(631) 543-5434