

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 25, 2026

**BY ECF**

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Street
New York, New York 10007

> Re:    ***United States v. Albert Haft***,
> **S1 22 Cr. 19c(PGG)**

Dear Judge Gardephe:

The Government respectfully submits this letter to address issues that arose during the parties' appearance on February 18, 2026. The Court directed the Government to file a supplemental sentencing letter addressing (1) the basis of the Government's calculation of tax loss and restitution, (2) whether the defendant's testimony before the Grand Jury in 2021 constituted perjury or obstruction under Guidelines Section 3C1.1, and (3) whether the defendant's production of electronic accounting records in December 2023 that had been altered prior to production constituted obstruction under Section 3C1.1.

## Tax Loss and Restitution

The tax loss and restitution for the defendant are the tax loss and restitution from the offense of conviction, a conspiracy to commit tax fraud with Bradley Pierre, Jean Pierre, William Weiner, and others.  For purposes of tax loss calculation under Guidelines Section 2T1.1, the relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," § 1B1.3(a)(1)(A); and:

> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
> > (i) within the scope of the jointly undertaken criminal activity,
> >
> > (ii) in furtherance of that criminal activity, and

>        (iii) reasonably foreseeable in connection with that criminal
> activity[.]

Guidelines § 1B1.3(a)(1)(B). See also United States v. Reifler, 446 F.3d 65, 108 (2d Cir. 2006) (Relevant conduct for Guidelines calculations requires "the district court to take into account injuries that were the outcome of the defendant's own offense conduct or of foreseeable acts by his cosonspirators in furtherance of the conspiracy.").

Restitution, similarly, is based on the pecuniary loss to victims of the offense, including losses caused by the conduct of co-conspirators that is reasonably foreseeable to the defendant. *See, e.g., United States v. Goodrich*, 12 F.4th 219, 228-29 (2d Cir. 2021).

Here, the scope of the conspiracy included Haft's preparing and filing false and fraudulent tax returns for others to impede, impair, obstruct, and defeat the IRS's computation and collection of income taxes. (PSR ¶ 2.) Haft helped his clients underreport business income in order to lower tax payments (PSR ¶ 24) and mischaracterize personal expenditures as business expenses (PSR ¶¶ 27-30). Haft helped his clients mischaracterize payments from one client to another in a manner that manipulated whether the payments were deductible for the payor and whether they were income for the payee. (PSR ¶ 31.)

The Government submits that Haft is responsible under § 2T1.1 for the tax loss for the conspiracy attributable to the Pierres and Weiner, and is responsible for restitution purposes for the pecuniary loss to the IRS from the fraudulent returns filed by the Pierres, Weiner, and their entities.

Tax loss and restitution for Bradley Pierre. Between 2014 and 2019, Pierre underreported income and overreported business expenses in the total amount of approximately $3,934,524, *see* Exhibit A. This resulted in underpaid taxes in the amount of approximately $1,563,557. *See* D.E. 417-1 (Bradley Pierre Sent. Mem. Ex. Q);[1] *see also* D.E. 422 (Consent Order of Restitution).

Exhibit A was prepared by an IRS Special Agent and calculates income that was not reported at all or was mischaracterized as non-income receipts, as well as business expense deductions that were improperly claimed for personal expenditures. Bradley Pierre agreed with these calculations, and the Government elects to apply that calculation here for sentencing purposes. Calculating Pierre's underreported taxable income was a complex exercise, in part because Pierre's treatment of receipts and expenditures at times was highly arbitrary, especially with respect to his purported loan agreements with Nexray and other medical clinics. The $3.9 million calculation represents the most conservative estimate; applying other assumptions to Pierre's finances resulted in underreported taxable income of up to $7,531,933.

---

[1] Pierre filed amended tax returns requiring the payment of $1,563,557 in fraudulently underreported income, as well as penalties totaling approximately $1,172,667.75.

Tax loss and restitution for Jean Pierre. Between 2014 and 2019, Jean Pierre underreported income and overreported business expenses in the total amount of approximately $729,864.77. *See* Exhibit B.[2] This resulted in underpaid taxes in the amount of approximately $220,000. *See* D.E. 424 (Consent Order of Restitution); see also D.E. 409 at 3 (acknowledging a tax deficiency of at least $165,000).

Tax loss and restitution for William Weiner. Between 2017 and 2020, Weiner underreported income and overreported business expenses in the total amount of approximately $912,000. See D.E. 418-8 at 4. This resulted in underpaid taxes in the amount of approximately $112,560. *See id*. By the time of Weiner's sentencing, he had paid some of these past due taxes, resulting in a loss to the IRS at that time of approximately $76,127.00. *See* D.E. 510 (Order of Restitution).

Total tax loss and restitution from the conspiracy. Accordingly, the total fraudulently underreported income from the conspiracy was approximately $1,896,117.00. Taking account of Weiner's payments to the IRS at the time his Order of Forfeiture was entered, the total unpaid victim loss is $1,859,684.

This tax loss results in adding an additional 22 levels to the defendant's total offense level using the tax table in Guidelines Section 2T4.1. This Guidelines calculation is the same under the application of Guidelines Section 2T1.1(c)(1) Note (A), which treats the tax loss as 28% of underreported gross income. Applying the most conservative available calculation of $3,934,524 for Bradley Pierre's underreported taxable income, 28% of the underreported income from the conspiracy is $1,561,388.86, which also results in an additional 22 levels under Section 2T4.1.

### Haft's Grand Jury Testimony

During grand jury testimony on May 18, 2021, Haft was asked the following questions and provided the following answers:



---

[2] Exhibit B was prepared by an IRS Special Agent and calculates income that was not reported at all or was mischaracterized as non-income receipts, as well as business expense deductions that were improperly claimed for personal expenditures. Jean Pierre agreed with these calculations.



³  The Government submits that this testimony was false or misleading, but does not constitute perjury or obstruction.  It is false or misleading because the defendant was asked

_____

³ The defendant was being asked about a portion of the general ledger for MRC from 2017. As of the filing of this letter, the Government has not obtained a copy of this exhibit from its storage location.



he testimony also does not amount, in the Government's view, to obstruction because it did not obstruct or impede the investigation. The fact that many expenses were personal and not business was obvious from the face of the documents, and within a few months of this testimony the defendant began proffering and acknowledged as much.

During grand jury testimony on May 18, 2021, Haft was also asked the following questions and provided the following answers:



(May 18, 2021 Tr. at 15-16.) As with the testimony described above, the defendant's testimony was false and misleading, but the Government does not ask the Court to find that it amounted to

The testimony does not amount, in the Government's view, to obstruction because it did not obstruct or impede the investigation. Within a few months of this testimony the defendant began proffering and acknowledged his belief that Jean Pierre's company did not provide any actual services to MRC.

During grand jury testimony on May 18, 2021, Haft was also asked the following questions and provided the following answers:





(May 18, 2021 Tr. at 22-24.)[4] As with the testimony described above, the defendant's testimony was false and misleading, but the Government does not ask the Court to find that it amounted to perjury or obstruction. The testimony was false and misleading because, in response to the question, ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████ The testimony does not amount, in the Government's view, to obstruction because it did not obstruct or impede the investigation. The fact that payments to Bradley Pierre were not genuine officer loans was apparent from the financial records, and within a few months of this testimony the defendant began proffering and acknowledged as much.

The Government, accordingly, does not ask the Court to apply the two-level enhancement for obstruction under Guidelines Section 3C1.1. This testimony is relevant to the Court's consideration of the defendant's history and characteristics and his role in the offense, along with the fact that, after this testimony, the defendant retained counsel, began proffering, and ultimately pleaded guilty to his participation in the tax fraud conspiracy.

### Haft's Production of Altered Electronic Accounting Records

As described in the Government's sentencing submission, the Government learned during these interviews in preparation for trial that Haft had additional electronic accounting records that had not previously been produced in response to grand jury subpoenas, and Haft required repeated, detailed instructions about gathering and providing records before the Government gained confidence that all relevant records had been provided. During the Government's review of electronic accounting records provided by Haft in the course of these meetings, the Government learned that the records had been edited in August 2022 and December 2023—after the relevant tax returns had been filed, after Haft had been given a grand jury subpoena for all relevant records, and after Haft had been meeting with the Government and law enforcement agents.

The audit trail for the electronic records shows that the defendant made the following changes to the QuickBooks file for Nexray Medical Imaging, Weiner's medical clinic:

On or about August 21, 2022, the following changes were made, among others:
- "General Journal Entry 31" through "General Journal Entry 35" were edited to change entries for the 2017 NExray general ledger, including changes to Nexray's Payroll

---

[4] The defendant was being asked about a portion of the general ledger for MRC from 2016. As of the filing of this letter, the Government has not obtained a copy of this exhibit from its storage location.

Expenses, reclassifying approximately $71,132 in MRC management fees as Shareholder Distributions, and reclassifying approximately $70,000 in Shareholder Distributions to Medical Records and Supplies.

On November 26, 2023, the following changes were made, among others:

- "General Journal Entry 14" was edited to reclassify $1,119.49 in Shareholder Distributions as Payroll Liabilities.
- "General Journal Entry 27" was edited to reclassify approximately $66,722 in 2020 Shareholder Distributions to Professional Fees and Fee for Serving Income.

On December 13, 2023, the following changes were made, among others:

- "General Journal Entry 18" was edited to reclassify $227,880.57 in 2019 Shareholder Distributions to MRC Management Fees.

As discussed during the February 18, 2026 conference, the Government is unable to understand the defendant's state of mind in making these changes to electronic records that constituted evidence in a criminal case, especially not the reason for making changes in August 2022 after the defendant had been subpoenaed and had been questioned about general ledgers in the grand jury; or for making changes in November and December 2023 during preparation for trial.

These alterations did not impair the Government's investigation, because the investigation already had resulted in charges and guilty pleas. It did significantly impair the Government's ability to prosecute some of the charged offenses, because it had the effect of undermining the reliability of the defendant as a custodian of records and as a trial witness.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by:  _____
Michael D. Lockard / Qais Ghafary
Assistant United States Attorneys
(212) 637-2193 / -2534