LAWRENCE H. SILVERMAN
ATTORNEY AT LAW
350 VETERANS MEMORIAL HIGHWAY
COMMACK, N.Y. 11725

(631) 543-5434

*(631) 543-5922 FACSIMILE
*NOT FOR SERVICE OF PROCESS
SLARRYLAW@AOL.COM

FORMER NYC OFFICE
THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
NEW YORK, N.Y. 10118

March 9, 2026

**VIA ECF**
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Centre Street, Room 2204
New York, New York 10007

        Re:    United States v. Albert Haft
                  United States District Court
                  Southern District of New York
                  <u>File No. 22 CR 19 PGG</u>

Dear Judge Gardephe:

       On February 18, 2026 Defendant Albert Haft appeared for sentencing. At that time the Court indicated that additional information would be needed.

       The Court asked the Government and defense counsel to address three issues (1) the proper calculation and application of the Government's tax loss to (a) the sentencing guideline and (b) any restitution to be ordered by the Court, (2) whether Haft committed perjury in the grand jury and obstructed justice and (3) whether Haft's corrections to electronic files which generated documents previously produced by him to the Government would justify an obstruction of justice enhancement to the sentencing guideline calculation.

       The Government responded by letter dated February 25, 2026.

**THE TAX LOSS CALCULATION**

       In calculating the Government's tax loss under U.S. Sentencing Guidelines Manual Section 1B1.3(a)(1)(B)(i)(ii) and (iii), a defendant is responsible for all *reasonably foreseeable acts and omissions* within the scope of and in furtherance of *jointly undertaken criminal activity*. Bradley Pierre had millions of dollars in undeclared income of which Haft was not aware and was not within the scope of the *jointly undertaken criminal activity*, to wit -the filing of tax returns with improper deductions. Much less was it *"reasonably foreseeable"* by Haft. Pierre's failure to disclose the income to Haft and the IRS was not within the scope of any criminal activity *"jointly undertaken"* with Haft.

LAWRENCE H. SILVERMAN
ATTORNEY AT LAW
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
March 9, 2026
Page -2-

      During the February 18th sentencing conference, the Court asked a pointed question - whether the Government was claiming that it was "*reasonably foreseeable* to Haft that there were other instances in which Bradley Pierre was telling him to take deductions for business expenses, and that these were not legitimate. They're actually personal expenses." (See Transcript of Sentencing Conference on February 18, 2026, p.18, line 15-19)  Mr. Lockard responded that the Government is seeking to charge Haft, not only with tax losses flowing from illegitimate business expenses - but rather with *income* that Bradley Pierre never disclosed to him and which Haft did not know existed.  It appears that the *bulk* of the tax loss the Government is seeking to attribute to Haft is based on undisclosed income.  Mr. Lockard stated:

> "My understanding is that in terms of dollar figures, the main issue is that there was a bank account that Mr. Pierre had *that he never provided those bank account records to Mr. Haft*. And so when Mr. Haft was preparing the books for MRC and the other companies, and preparing the tax returns, *income deposited into that account was not reflected* ;[in the tax returns] *and Mr. Haft was not aware that that account existed.* I think that's the *main dollar figure factual issue ...*"

(See Transcript, p.18, line 21- p.19, line 4) (emphasis added)

      Simply put, Bradley Pierre's undisclosed income in undisclosed bank accounts was not reasonably foreseeable by Haft nor part of jointly undertaken criminal activity.

      The Court of Appeals has held that the district court must "make a particularized finding of the scope of the criminal activity agreed upon by the defendant" before considering whether acts in furtherance of that criminal activity were reasonably foreseeable to the defendant." *United States v. Studley* 47 F.3d 569, 574–75 (2d Cir. 1995).

      "The Government bears the burden of proving the intended loss amount by a preponderance of the evidence. *See, e.g. United States v. Desimone*, 119 F.3d 217, 228 (2nd Cir. 1997)" *United States v. Ankamah*, 2004 U.S. Dist. LEXIS 5816 (SDNY 2004)  The Second Circuit has held that specific findings of fact must be made by the district court before the amounts of the Government's alleged tax loss may be applied both for guideline purposes and restitution. *United States v. Sanchez,* 2016 U.S. Dist. LEXIS 17132

      The Government has applied to Haft all of the tax loss attributed to Bradley Pierre's undeclared income. That Pierre agreed to the accuracy of the tax loss calculations made by the IRS Special Agent which are reflected in Exhibit A to the Government's letter.  It is submitted that attributing to Haft all of the tax losses conceded by Pierre does not satisfy the reasonableness test.

LAWRENCE H. SILVERMAN
ATTORNEY AT LAW
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
March 9, 2026
Page -3-

      The difficulty with the Government's reasonableness argument is that it is arbitrary. For example, when applying the reasonableness standard to undeclared income, what would be reasonable? Should Haft have reasonably foreseen that, in addition to the improper deductions that Pierre had $500,000, $1 million, $2 million in undisclosed earnings? The difficulty answering that question reveals the arbitrariness of the exercise.

      Haft pled guilty to conspiring with the other defendants to take tax deductions to which they were not entitled. The tax losses is attributable to those deductions are fairly chargeable to him. As stated in Haft's sentencing memorandum, we believe that when those losses are totaled, they will result in a sentencing guideline no larger than 18. We believe that amount is within the knowledge of the Government and Mr. Haft will accept responsibility to make restitution in the that amount.

      Essentially, the Government's analysis fails to satisfy the test articulated in *United States v Reifer*, 446 F.3d 65, 108 (2d Cir. 2006) The tax losses as a consequence of Pierre's undisclosed income were neither "the outcome of the defendant's own offense conduct or foreseeable acts by his coconspirators in *furtherance of the conspiracy*." Bradley's failure to disclose to Haft millions of dollars of income was not *in furtherance of the admitted conspiracy to take improper deductions*.

## HAFT'S GRAND JURY TESTIMONY

      As to obstruction of justice or perjury before the grand jury, the Government has stated that Haft was not directly asked about any particular item of income or deduction that he untruthfully denied. In the context of examining a potential cooperating witness in the grand jury, it is not surprising that the Government did not pose specific questions to the witness that would create a record that might not be helpful at a future trial. Mr. Lockhart stated "Mr. Haft was not asked a direct question, Did you know these entries were false?"(Transcript, p.23, line 7)

      In response to the Court's inquiry, Mr. Lockhart stated "[a]nd I think the reason I say I wouldn't characterize this as perjury is because the answer Mr. Haft gave, Bradley Pierre told me they were business expenses. That is literally true. Mr. Pierre did tell him that these were business expenses." (Transcript, p. 24, line 13-17) Mr. Lockard characterized Haft's testimony as "technically correct; but it was certainly misleading . . . but not something that we would submit rises to the level of obstruction enhancement under the guidelines calculation." (Transcript, p. 24, line 23 - p. 24, line 3 )

LAWRENCE H. SILVERMAN
ATTORNEY AT LAW
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
March 9, 2026
Page -4-

## HAFT IS NOT GUILTY OF OBSTRUCTION

The Court has asked that the defense address Haft's state of mind in making what the Court characterized as "alterations" of a QuickBooks file. The changes that Haft made in the Quickbooks entries were in the nature of corrections.

During his cooperation, Haft disclosed that there were electronic backups of the QuickBooks file on his office server that had not been produced. As a layman, not represented by counsel at the time he made the initial production, Haft did not appreciate that computer backups of files are within the scope of documents that should have been produced initially. Once his cooperation was underway the backups were requested and disclosed. (Transcript, p. 25, line 10 - 15) When discrepancies were noted, Haft took it upon himself to correct the backup files so that the entries would agree with the filed tax returns and the QuickBooks file initially produced. It was his belief at doing so would be helpful. While it is true that Haft was altering documents, his intention was to correct them.

During the February 18th court conference, Mr. Lockard confirmed:

> "[T]he change (sic) that Mr. Haft made were not changes to hide his involvement. He effectively made changes to underlying journal entries that matched what was happening in the fraudulent scheme, but were not apparent in the records as they existed contemporaneously. . . I think Mr. Haft was trying to provide the, quote, unquote, correct version of the records, without appreciating that that's actually altering the records and changing the evidence in a way that makes them incorrect because they are not the contemporaneous version."

(Transcript, p. 26, lines 6 - 16)

The Government's view of Haft's conduct during preparation is inconsistent with an notion that he was guilty of obstruction of justice.

> "[A]cknowledging the limitations on knowing what was going on in Mr. Haft's mind at the time, I think altering the documents was sort of consistent with that reflex of trying to provide the right documents as opposed to the contemporaneous documents."

(Transcript, p. 27, lines 16 - 20)

LAWRENCE H. SILVERMAN
ATTORNEY AT LAW
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
March 9, 2026
Page -5-

In response to the Court's question to the Government whether the alteration represented an effort to correct something, Mr. Lockard stated "he corrected it in the sense of adding it because that is in fact what they did, but it wasn't part of the QuickBooks ledger that they were relying on at the time." (Transcript, p. 28, line 16 - 18)

**CONCLUSION**

Mr. Lockard has informed the Court that notwithstanding the difficulties posed by the altered document, the Government was moving under §5K1.1 "because Mr. Haft did provide substantial assistance that did facilitate the filing of charges to which coconspirators have admitted and pled guilty to." (Transcript, p. 26, line 4 - p. 27, line 2)

The defense sincerely thanks all of the representatives of the Government who have worked on this case for their professionalism, understanding and candor throughout the prosecution of this case.

Respectfully submitted,

Lawrence H. Silverman

cc: AUSA Michael Lockhard (via ecf)
AUSA Qais Ghafary (via ecf)